No. 14,370.

BLAKELEY ET AL. *v.* PEOPLE EX REL. MADDEN.
(89 P. [2d] 1015)

Decided April 10, 1939. Rehearing denied May 1, 1939.

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, for plaintiffs in error.

Mr. CHARLES T. MAHONEY, Mr. W. W. GRANT, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

AN action in mandamus by the people on relation of Madden, judge of the juvenile court of the City and County of Denver, to require officials of Denver who perform duties ordinarily discharged by boards of county commissioners in other counties, to pay him additional salary. The writ was granted.

At the time of relator's election, 1936, the statute provided that the judge of the juvenile court of Denver, "shall receive an annual salary of not less than that received by the district judge or judges of such county [S. L. '23, page 211, section 3, '35 C. S. A., chapter 46, section 205]," payable out of the county treasury in equal monthly installments. Originally (S. L. '07, chapter 149, section 7), the salary of the judge of the juvenile court was fixed at a definite sum per year, $4,000, incidentally the same as the salary of district judges, but having no relation thereto, as in the act of 1923, where no sum was mentioned. Under both acts, 1907 and 1923, the judge of the juvenile court was paid at the rate of $4,000 per annum, in equal monthly installments, and, although the act of 1923 authorized payment of a greater sum, but not less, than that received by district judges, under neither act did the City and County of Denver pay the judge of its juvenile court other than at the rate of $4,000 per annum; nor until as of June 7, 1937, at least so far as appears, had any occupant of that position claimed to have legal right to enforce payment of a

greater salary. Relying on an act of the legislature effective as of the date last mentioned, which fixed the salary of district judges at $5,000 per annum, in lieu of $4,000 as theretofore (S. L. '37, chapter 149, '38 Supp., '35 C. S. A., chapter 66, article 3, section 52), and the act of 1923, supra, relator asserts that as of said date his salary was correspondingly raised. Respondents say that since the act of 1937 was passed while relator still was serving a term of office to which he theretofore had been elected, the Constitution inhibits its operation until the commencement of the next term of that office. They invoke that portion of article V, section 30, of the organic law which reads: "No law shall extend the term of any public officer, or increase or decrease his salary, after his election or appointment, as fixed by legislative enactment."

If it may be said that relator's salary was fixed in the sense of sum or amount at the time of his election, then on authority of *Carlile v. Henderson,* 17 Colo. 532, 31 Pac. 117, and *Henderson v. County of Boulder,* 51 Colo. 364, 117 Pac. 997, called to our attention by counsel for respondents, the contention that there was error below would be sound; and had the act of 1907 remained unchanged, the essential fixity of salary would be manifest. But in 1923, as we have seen, the legislature amended the 1907 act in the matter of the salary of the judge of the juvenile court by tying it, as to amount, to the salary of district judges. The language is, that the judge of the juvenile court "shall receive an annual salary of not less than that received by the district judge or judges" of his county. Clearly, as we conceive, the legislature intended that the salary of the judge of the juvenile court (unless, indeed, county authorities should voluntarily pay a larger salary) shall at all times correspond with, and be not less than, that which the state pays its district judges; and only in that sense did the act of 1923 fix the salary of the judge of the juvenile court. Until the 1923 act, the act of 1907 made full revelation as to

the amount of salary of the judge of the juvenile court. But when the act of 1923 became effective the amount of such salary was ascertainable only by an examination of that act *and* whatever law fixed the amount of salary of district judges. The process of ascertainment necessarily was a continuing one; that is to say, to cognize the salary of the judge of the juvenile court at any given time, resort must be had to the law in relation to the salary of district judges then in force. Until June 7, 1937, such examination would have shown that the salary of the judge of the juvenile court was $4,000, but on and after that date like research would disclose his salary to be $5,000. When the constitutional provision we have quoted was voted (1928), the people knew that the salary of the judge of the juvenile court was fixed only by reference to that of judges of district courts, and it is reasonable to infer they believed that authorized change in salaries of district judges, when made, would work immediate like result as to the salary of the judge of the juvenile court. Such deduction is akin to the rule promulgated in *Golden v. People, ex rel.,* 101 Colo. 381, 74 P. (2d) 715, where we said: "The people, in adopting that act, merely accepted a status known to all to exist."

We conclude that writ of mandate properly issued. Let the judgment be affirmed.

Mr. Justice Bakke and Mr. Justice Knous concur.

Mr. Justice Young concurs specially.

Mr. Justice Bock and Mr. Justice Burke dissent.

Mr. Justice Francis E. Bouck does not participate.

Mr. Justice Young, specially concurring.

I concur in the opinion of the court—which recites the facts and issues—affirming the judgment in this case. The suit involves a construction of section 30, article V of the Colorado Constitution, which, so far as pertinent to the matter before us, provides: "No law shall extend

the term of any public officer, or increase or decrease his salary, after his election or appointment, as fixed by legislative enactment.''

The question presented is one of moment and I am impelled on this account to set forth in a concurring opinion what appear to me to be additional reasons for the conclusion announced in the principal opinion. If what I write does not in fact constitute additional reasons to those contained or suggested therein but amounts only to a repetition of them in greater detail, it at least will disclose the processes, which to me seem sound, by which I personally have arrived at the announced conclusion.

The evident purpose of the restriction on the power of the legislature contained in section 30, article V, supra, is to prevent public officials, the agents of the people, after their election or appointment, in the manner provided by law, whether to serve in the executive, legislative or judicial department of government, from being subjected to the dictation or control of the legislature by having their compensation for services increased or decreased or abolished altogether as their services please or displease that body. In effect the compensation or salary of a public officer as fixed by legislative enactment constitutes the consideration passing from the state to him as its agent under what is, if not a contract, at least analogous to one entered into between him and the state concerning the services which he is to render.

If the amount he is to receive is definite and certain and fixed in dollars and cents, the officer is entitled to receive the specific amount so provided, no more and no less, regardless of any legislative change in the amount made after his election or appointment. If the compensation he is to receive depends on a contingency, as for example, upon the amount of fees he shall receive when fees are fixed and the officer is allowed to retain them, then the compensation, as to the manner of its determination, is fixed, though as to the amount actually to be

received it is contingent. One entering upon such an office does so with his compensation fixed though the amount he will receive in dollars and cents is uncertain. He may not be given more, nor may he be required to accept less than the maximum of fees collected. The salary of the judge of a juvenile court was at all times fixed, but was not, after the 1923 amendment (section 205, chapter 46 '35 C. S. A.), certain as to amount, which was subject to several contingencies: (1) The commissioners, by the exercise of power vested in them by the legislature might determine that he should be paid more than $4,000, the then constitutional salary of a district judge. (2) The salary of the district judge might be decreased and, in the absence of prior action by the commissioners fixing the salary of the judge of the juvenile court at $4,000 or more, the amount he would receive thereafter would fall in an amount equal to that by which the district judge's salary was decreased. (3) The salary of the district judge might be raised and, in the absence of prior action by the commissioners fixing the salary of the judge of the juvenile court at an amount higher than that to which the increase in the salary of the district judges raised their salaries, he would thereafter receive an amount equal to that of the increased salary of district judges. The effect of section 30, article V is to give to the elected or appointed official a vested right to all the compensation that he may receive by virtue of the law providing for his compensation at the time of his election or appointment to office. If the law in force at that time is such that the compensation may vary by reason of the happening of reasonable contingencies, there is vested in the official the right to increased benefits that may accrue, and there is imposed upon him the burden of diminished benefits which may result as the contingencies do or do not arise.

Was the contingency of a change being made in the salaries of the district judges a reasonable one for the legislature to incorporate as a factor to be considered

at any given time as determinative of the amount of compensation which the judge of the juvenile court should receive? I think it was. The legislature, having in mind the important duties and responsibilities it had imposed upon the incumbent of the office, provided that the qualifications of a judge of the juvenile court should be the same as are those of a judge of the district court. It prohibited him while holding the office from engaging in the practice of law. Originally it fixed his annual compensation at $4,000, the then constitutional salary of a district judge. S. L., '07, c. 149, §7. The amendment of 1923 (section 205, chapter 46, '35 C. S. A.) provided that his annual salary should be not less than that received by the district judges of the county in which the juvenile court was located. In 1923 the question of increasing the salaries of district judges was being agitated. It was not, however, then within the power of the legislature to increase the salaries of district judges. Such power was not given by the people until the amendment of section 30, article V was voted in 1928. It was always within the power of the General Assembly to declare as a matter of public policy that the duties of the office of the judge of a juvenile court were of such importance as to require the entire time of a man possessing the qualifications required of one holding the office of district judge. It was within its power to determine the compensation to which such a statutory officer was entitled. It was also within its power to make such compensation an absolute amount or variable as reasonable contingencies might or might not arise. The contingency that it fixed as determinative of the minimum compensation was the amount of salary of district judges, then constitutionally established at $4,000. The General Assembly had no possible way of knowing whether this salary would remain fixed by the Constitution at $4,000 or would be by amendment raised or lowered and then remain constitutionally fixed, or whether the power to fix such salaries would be granted to it by an amendment of the Consti-

tution. In 1928 such power was conferred upon it, which it did not, however, exercise until nine years later, and fourteen years before it had declared it to be the policy of the state to pay salaries to judges of the juvenile courts in an amount at least equal to that received by district judges. It had the power, when it changed the district judges' salaries, to leave the salary of the judges of juvenile courts subject to variation by the happening of the contingency of a change in the district judges' salaries or to remove the contingency and fix it, at least as to all judges subsequently elected, at $4,000, the amount the judge of a juvenile court had been receiving. It chose to do the former. Having done so a judge of a juvenile court was entitled to receive the resulting additional compensation forthwith upon the changing of the district judges' salaries, for he entered upon the duties of his office with the possibility of the contingency happening which might increase or decrease the amount he would receive. The possibility of financial benefit to him, resulting in an equal financial loss to the state and the possibility of financial loss to him resulting in an equal financial benefit to the state, were fixed and certain when he entered into the office, and binding upon both parties, the official and the state. To deny him the benefit of the contingency if district judges' salaries were raised would be to reduce his compensation; to relieve him of its burden if they were lowered would be to increase his compensation. Neither, under section 30, supra, may be done.

That the salary "fixed by legislative enactment" in 1923, cannot be changed is admitted. The question here involved is what was the salary or compensation for official services that the legislature fixed? Was it $4,000, no more, no less, throughout the term? Such was the effect of the law as it stood prior to the 1923 amendment. Did the 1923 amendment, passed long before petitioner was elected to office, mean nothing more than that the commissioners might raise the salary above $4,000? In *Young v. Commissioners,* 102 Colo. 342, 79 P. (2d) 654,

a case in which the same constitutional provision was under consideration we said: "The question is, When plaintiff was elected November 7, 1934, what was then the compensation fixed by law for the term for which he was elected? That compensation had been definitely fixed by said chapter 152, already passed and approved, and effective on the date named therein, i. e., January 15. The compensation had been changed as of that date when plaintiff was elected." In that case we held that a law denying county treasurers of the class to which Park county belonged the right to retain fees for acting as public trustees, duly passed at the time the county treasurer of Park county was elected but not operative to prevent the retention of such fees until the day he was sworn into office, deprived him of the right to such fees. Had the treasurer theretofore not had such right and the law, instead of denying had given it thereafter, can it be doubted under the rule laid down that he would have been entitled to such fees? With a law duly enacted at the time petitioner was elected effective to give him at least $4,000 as an annual salary but providing that if certain other salaries were changed the minimum that he might receive should be raised or lowered accordingly as the case might be, is there less reason for holding the rule applicable to him than to the county treasurer? The only possible distinctions between the two cases are that in the one the monetary compensation which the officer received was diminished, while in the instant case it is increased; and that the date of the decrease in the one case was definite and certain, while in the other it was contingent and therefore uncertain. If the contingency is reasonable under all circumstances, and particularly if as was the case here when the law was passed, it is beyond the power of the legislature to control it, and if it does not appear to have been provided merely for the purpose of reserving, and to have the effect of reserving, arbitrary power to the legislature, the happening of the contingency by reason of which the official's salary varies

either up or down entitles him immediately to the benefit if it rises and imposes on him the burden if it falls.

MR. JUSTICE BURKE, dissenting.

I dissent. I think the court's opinion sanctions not only amendment of the Constitution by indirection and implication, but amendment by the legislature. My reason for that conclusion, to which I think no answer has been made, may be thus briefly stated: There is not a word in the Constitution about a juvenile judge or his salary. Hence if he has any salary it must be provided solely by statute. During every minute that court has been in existence the Constitution has forbidden the application of changes in salaries so fixed to persons then in office. This judge was in office when the statute was passed, hence he can not take the increase during that term. Mr. Justice Bock concurs herein.