Hart, J.
 

 The question presented by the respondent’s demurrer is whether a statute, effective before the' commencement of the term of a common pleas
 
 *275
 
 judge, whereby his compensation is automatically increased during the term by reason of the increase of the population of his county as shown by a federal census effective after the beginning of the term, is in conflict with Section 14, Article IV of the Constitution, the pertinent part of which is as follows:
 

 ‘ ‘ The judges of the Supreme Court, and of the Court of Common Pleas, shall, at stated times, receive, for their services', such compensation as -may be provided by law,
 
 which shall not be diminished, or increased, during their term of office *
 
 # (Italics ours.)
 

 After 1910 and prior to August 11, 1927, the language of Section 2252, General Code, so far as it relates to the determination of the compensation of the judges of the Common Pleas Court by the census of the county, was “as ascertained by the federal census
 
 next preceding his assuming the duties of Isuch office.”
 
 (Italics ours.) This language needs no interpretation and there can be no mistake as to its meaning.
 

 This court has held on several occasions that because of the inhibition of Section 14, Article IV of the Constitution, a legislative act diminishing or increasing the compensation of common pleas judges on the basis of a change of population of the county in which they are elected, has no application to a judge whose term of office has commenced before the act became effective.
 
 State, ex rel. Stanton, Pros. Atty.,
 
 v.
 
 Zangerle, Aud.,
 
 35 C. D., 736, 32 O. C. A., 273 (reversing
 
 State, ex rel. Powell,
 
 v.
 
 Zangerle, Aud.,
 
 22 N. P. [N. S.], 485, 31 O. D. [N. P.], 232), affirmed
 
 Zangerle, Aud.,
 
 v.
 
 State, ex rel. Stanton, Pros. Atty.,
 
 105 Ohio St., 650, 138 N. E., 927. See
 
 State, ex rel. Metcalfe,
 
 v.
 
 Donahey, Aud.,
 
 101 Ohio St., 490, 129 N. E., 594;
 
 State, ex rel. Holmes, Judge,
 
 v.
 
 Thatcher, Aud.,
 
 116 Ohio St., 113, 155 N. E., 691. To the same effect is the case of
 
 State, ex rel. Gilbert,
 
 v.
 
 Bd. of Commrs. of Sierra County,
 
 29 N. M., 209, 222 P., 654, 31 A. L. R., 1310. Compare
 
 Heuck, Aud.,
 
 v.
 
 State, ex rel. Mack,
 
 127 Ohio St., 247,
 
 *276
 
 187 N. E., 869, where the act took effect after the term of office had commenced, that is, during the term. However, in
 
 Zangerle, Aud.,
 
 v.
 
 State, ex rel. Stanton, Pros. Atty.,
 
 105 Ohio St., 650, 138 N. E., 927, it was held by a majority of the court that a judge of the Common Pleas Court who was elected to an unexpired term which commenced after the effective date of the act increasing the salary, was entitled to such increased salary notwithstanding the fact that the constitutional term of six years, a part of which he completed, began prior to the effective date of the act'.
 

 Relator claims that by virtue of Section 2252, General Code, as amended effective August 11, 1927 (112 Ohio Laws, 345), his compensation payable to him by Hamilton county after April 1,1940, is expressly made dependent upon the
 
 latest
 
 federal census, which in this instance became effective as of that date, during his term of office. Section 2251, General Code, provides that the annual salary of common pleas judges shall be $3,000 payable from the state. Section 2252, General Code, provides for additional compensation to judges of the Common Pleas Court. The pertinent portion of this section is as follows:
 

 “In addition to the salary allowed by Section 2251, each judge of the Court of Common Pleas shall receive an annual compensation equal to three cents per capita for the first 50,000 of the population of the county in which he resided when elected or appointed,
 
 as ascertained by the latest federal census of the United Stat&s * *
 
 (Italics ours.)
 

 The relator claims that while the italicized portion of this section as above quoted entitles him to more money since April 1, 1940, because of the increase of population of Hamilton county, it does not serve to
 
 increase
 
 his compensation as a common pleas judge
 
 during his term,
 
 for the reason that the provisions of the statute became effective before his term commenced. In other words, he claims that the change in
 
 *277
 
 compensation during the term resulting under Section 2252, General Code, is not due to an express authoritative enactment
 
 after his term began,
 
 hut is an incident flowing from the contingency of change in population in accordance with the statute, effective before his election; and that this interpretation means no increase or decrease of compensation made during his term, which is the vice inhibited by the Constitution.
 

 Again, the language and meaning of the statute as amended in 1927 are plain. The statute shows a legislative intent to provide, prior to the commencement of a judicial term, a compensation which may vary in amount during the term, depending upon the “latest federal census” instead of the “census next preceding” the term, and on its face supports the claim of the relator.
 

 It is clear that this statute is not wholly unconstitutional in and of itself. The claimed constitutional conflict arises when applying the section to the compensation of a judge whose term has commenced prior to a new census which has become effective during his term. In terms, the statute does so apply and it is to this feature of it that the test of constitutionality must be directed.
 

 Every reasonable presumption must be indulged in favor of the constitutionality of a statute and it is the duty of the courts to construe statutes liberally, in order to save them from constitutional infirmities. 8 Ohio Jurisprudence, 154, 158, Section 58;
 
 Gilpin
 
 v.
 
 Williams,
 
 25 Ohio St., 283; 16 Corpus Juris Secundum, 234, Section 98, and note 2, citing Ohio cases. As between two possible interpretations of a statute, one unconstitutional and the other valid, it is the duty of the court to adopt that which will save the act.
 
 Panama Rd. Co.
 
 v.
 
 Johnson,
 
 264 U. S., 375, 390, 68 L. Ed., 748, 44 S. Ct., 391;
 
 Missouri Pacific Rd. Co.
 
 v.
 
 Boone,
 
 270 U. S., 466, 472, 70 L. Ed., 688, 46 S. Ct., 341;
 
 Blodgett
 
 v.
 
 Holden,
 
 275 U. S., 142, 148, 72 L. Ed., 206, 48 S. Ct.,
 
 *278
 
 105;
 
 Richmond Screw Anchor Co.
 
 v.
 
 United States,
 
 275 U. S., 331, 346, 72 L. Ed., 303, 48 S. Ct., 194. The statute and constitutional provisions must be read together and so harmonized as to give effect to both when this can be done consistently. One of the tests of the constitutionality of a statute is whether it attempts to validate and legalize a course of conduct, the effect of which the Constitution forbids. If a legislative act does not override or interfere with the purpose .and object of a constitutional limitation, it is not in conflict with the Constitution and therefore not invalid.
 

 The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last federal census becoming effective during his term.
 

 The statute possesses certain commendable features under the construction contended for by the relator. Under the statute, the judge’s compensation, based upon the latest census, bears relation to the volume of work to be performed by him and to the responsibility for its performance. Furthermore; the compensation of all common pleas judges of the same county is made equal in amount throughout the same period of time, whereas under the interpretation claimed by the respondent, when a succeeding census shows an increase of population, the junior judges thereafter elected are given larger compensation than their sen
 
 *279
 
 ior and ofttimes more experienced brethren whose ternas began nnder a lower preceding census.
 

 The General Assembly, nnder grant of power conferred by Sections 1 and 20 of Article II of the Constitution, has the sole authority to fix the salaries and compensation of the judges of the Common Pleas Court. No other officer or department of government has any authority or control over such salaries or compensation. The command in the Constitution, “shall not be diminished, or increased,” is in the passive voice, denoting that the subject (in this case compensation) of which it is the predicate, is not tobe acted upon. Acted upon by whom and when? Clearly, by the Legislature and during the “term.” The only other possible construction is to hold that the Constitution prohibits the Legislature from acting on (increasing or decreasing) compensation prior to the term, if that action fixes a sum, or a standard or basis of computation whereby compensation may vary in amount during the term. Past experience in this state_ discredits such construction.
 

 Section 20 of Article II of the Constitution provides:
 

 ‘ ‘ The General Assembly, in eases not provided for in this Constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer
 
 during his existing term
 
 * * *.” (Italics ours.)
 

 This inhibition is almost identical with that con-. tained in Section 14 of Article IY of the Constitution which relates to the compensation of common pleas judges.
 

 The Legislature in 1888 enacted Section 897a, Revised Statutes (85 Ohio Laws, 76), which is as follows:
 

 “In counties in which, by the
 
 last
 
 federal census, the population amounted to two hundred and fifty thousand, or upwards, each commissioner shall be allowed for expenses incurred by said commissioner, in the proper discharge of his duties within said county, the
 
 *280
 
 sum of ($1,000) one thousand dollars per annum * * (Italics ours.)
 

 The constitutionality of this statute was challenged in a taxpayer’s suit on the ground that it increased the salary of county commissioners of Hamilton county during the terms for which they had been elected, which terms began before the enactment of the statute, and for that reason contravened Section 20 of Article II of the Constitution above quoted.
 

 This court in that case
 
 {State, ex reí.,
 
 v.
 
 Raime, Aud.,
 
 49 Ohio St., 580, 31 N. E., 741), held that:
 

 “A statute, whatever terms it may employ, the only effect of which is to increase the salary attached to a public office, contravenes Section 20, of Article II, of the Constitution of this state, in so far as it may affect the salary of an incumbent of the office
 
 during the term he was serving'when the statute was
 
 enacted(Italics ours.)
 

 From this holding an inference may be drawn that if the population of a county by a
 
 last
 
 census taken during the term of a county commissioner should become 250,000 or upwards, such commissioner would be entitled to the increase in salary, provided his term began after the effective date of the statute granting such increase.
 

 Prior to 1904, the salaries of county commissioners, like those of other county officers in this state, were based upon the population of the respective counties. In 1904, the Legislature amended Section 897, Revised Statutes (97 Ohio Laws, 254), which is now Section 3001, G-eneral Code, making the salaries of county commissioners dependent upon the annual tax duplicate of the respective counties. This section as then enacted was as follows:
 

 “The annual compensation of each county commissioner shall be determined as follows:
 

 “In each county, in which on the twentieth day of December of
 
 the preceding gear
 
 the aggregate of the
 
 *281
 
 tax duplicate for real estate and personal property is five million dollars or less, the compensation shall be seven hundred and fifty dollars ($750), and in addition thereto, in each county in which such aggregate is more than $5,000,000, three dollars on each full $100,-000 of the amount of such duplicate in excess of said sum of $5,000,000. * * *” (Italics ours.)
 

 The basis thus provided for the determination of the salaries of county commissioners continued without change until the year 1911 (102 Ohio Laws, 514). Thereafter until 1937, by a series of amendments of Section 3001, General Code, the salaries of county commissioners were based upon the tax duplicate of the respective counties for the year 1911. After 1937, by further amendment of the same statute (117 Ohio Laws, 280), the salaries of county commissioners were again made dependent upon the population of the counties. During the years from 1904 to 1911, the salaries of county commissioners were variable during their respective terms, dependent upon the annual tax duplicate of their respective counties, and the validity of such salaries was not challenged in any court where the term of the commissioner began after the effective date of the statute in 1904. In the
 
 Maine case, supra,
 
 an interpretation was placed upon this statute which interpretation in principle is the same as that which the relator now claims should be applied to Section 2252, General Code. Again, this court, in the case of
 
 State, ex rel. DeChant,
 
 v.
 
 Kelser, Aud.,
 
 133 Ohio St., 429, 14 N. E. (2d), 350, held that the changed salary basis dependent upon population provided for commissioners under the statute as amended in 1937, could not apply to those whose terms had commenced before the amendment of that year became effective, but at the same time recognized the variable salary basis for the determination of salaries of county commissioners during their terms under the previous statute. (See page 430.)
 

 
 *282
 
 At the present time, by Section 7181, General Code, last amended in 1917 (107 Ohio Laws, 110), one of the three composite factors in the determination of the annual salary of a county surveyor is the public road mileage of his county which is variable in amount and which may change from year to year during his term.
 

 A legislative or executive construction is entitled to and will be given serious consideration by the courts in determining the meaning of an ambiguous constitutional provision, both as a matter of policy, and also because it may be presumed to represent the true intent of the instrument.
 
 Pac. Indem. Co.
 
 v.
 
 Indus. Acc. Comm.,
 
 215 Cal., 461, 11 P. (2d), 1, 82 A. L. R., 1170. A legislative or executive consideration of constitutional provisions adopted and acted on with the acquiescence of the people for many years, is entitled to great weight with the courts. 16 Corpus Juris Secundum, 74, Section 34.
 

 The Legislature in passing Section 3001, General Code, above mentioned, before the beginning of the term of office of a county commissioner, basing his compensation on the annual tax duplicate of a county, gave such statute an interpretation as not being in conflict with Section 20 of Article II of the Constitution which provides “no change therein [compensation] shall affect the salary of any officer during his existing term.”
 

 The inhibition found in Section 14, Article IV of the Constitution, to the effect that the compensation of common pleas judges “as may be provided by law,” that is, by the Legislature, “shall not be diminished, or increased, during their term of office,” is directed to the Legislature and not to the officer who pays the compensation or to the judge who receives it. The inhibition, according to the language of the Constitution thus directed to the Legislature, is that
 
 it
 
 shall not by legislative act during his term diminish or increase the compensation of any common pleas judge. Such com
 
 *283
 
 pensation must be fixed before his term begins, but there is no inhibition against the Legislature fixing such compensation before the term begins on a basis which may vary it in amount as time advances, provided that
 
 basis,
 
 within the contemplation and understanding of both the judge and the people who elect him, is fixed, certain and unchangeable during his term. Such action upon the part of the Legislature does not thereby sanction or attempt to legalize an evil or vice which the Constitution prohibits.
 

 This court has not heretofore passed upon the specific question presented by the record in this case. While there is a conflict in the cases construing the same or similar constitutional limitations, the weight of authority is that a statute effective before the beginning of the term of a public officer whereby his compensation is automatically increased or diminished during his term by reason of increase or decrease of the population or of the valuation of the taxable property as shown by a later census or tax duplicate, is not in conflict with a constitutional inhibition to the effect that the compensation of such officer shall not be increased or decreased during his term of office.
 

 The Supreme Court of Pennsylvania alone holds to the contrary. Section 33, Article III, of the Constitution of Pennsylvania provides that “no law shall extend the term of any public officer, or increase or diminish his salary, or emoluments, after his election or appointment. ’ ’
 

 In the case of
 
 Commonwealth, ex rel. Woodring,
 
 v.
 
 Walter,
 
 274 Pa., 553, 118 A., 510, in which a salary of a county commissioner based upon population was under consideration, the court held that:
 

 “The salary of the elective officer is fixed as of the date of his election, and no alteration in the amount thereof is permissible under the Constitution, whether it is attempted by a new law passed thereafter, or by the application of the provisions of an earlier statute
 
 *284
 
 directing the payment of a larger sum, when a county has a greater population.”
 

 The weight of authority on this question is represented by the cases to be noted as follows: Section 8 of Article XIV of the Constitution of Missouri inhibits an increase of salary of officers during their terms. In the case of
 
 State, ex rel. Harvey,
 
 v.
 
 Linville et al., Judges,
 
 318 Mo., 698, 300 S. W., 1066, the court said:
 

 “The increase of salary which a statute permits after an election showing an increase of population is not in violation of the Constitution in that the salary is increased during the term for which the officer was elected, because the law in force at the time of his election fixes his salary, to be ascertained at periods as changed by the increase of population.”
 

 The Constitution of Arizona, Section 17, Article IV, pt. 2, provides that “the Legislature shall never grant any extra compensation to any public officer * * * nor shall the compensation of any public officer be increased or diminished during his term of office.” In the case of
 
 County of Yuma
 
 v.
 
 Sturges,
 
 15 Ariz., 538, 140 P., 504, by a law of that state effective before the appellee was elected county treasurer, the salary in a county having a tax duplicate of less than $9,000,-000 was $2,200 per annum, but in a county having a tax duplicate of $9,000,000 or more, the salary was $2,500 per annum. During the term of the appellee the tax duplicate passed the nine million dollar mark and he claimed the larger amount of salary. The court said:
 

 “A consideration of the statute fixing the compensation of the appellee at the beginning of his term of office will make clear the distinction. When his term of office began, his compensation was definitely fixed and prescribed according as the assessed valuation of the county may be ascertained, if less than $9,000,000 a certain sum, and if $9,000,000 and over a certain sum; the fluctuation not being occasioned by any sub
 
 *285
 
 sequent legislative action, but by operation of the very law in force * *
 

 Section 9 of Article XI of the Constitution of California in 1912 provided that “the compensation of any county, city, town or municipal officer shall not be increased after his election or during his term of office.' ’
 

 In the case of
 
 Puterbaugh
 
 v.
 
 Wadham,
 
 162 Cal., 611, 123 P., 804, the court had before it the question whether the salary of a justice of the peace could be automatically increased under a statute basing salary on population, which statute was effective when the term began. The court said:
 

 £ £ Section 9 of Article XI is an inhibition directed to the Legislature * * *. We think the section could have no application to the change in salary due to the passing of a city, not by legislative act, but by increased population, from one class to another — not a legislative but an automatic change * * *. That this change would operate to increase his salary must also have been within their contemplation, and Section 9 of Article XI of the Constitution, which was designed to protect taxpayers from legislative interference with their rights by increasing the compensation paid to their elected officers without consent of the electorate would have no application to such a case as this.”
 

 In the case of
 
 Crowe
 
 v.
 
 Board of Commissioners of St. Joseph County,
 
 210 Ind., 404, 3 N. E. (2d), 76, the plaintiff was county auditor during the years 1930, 1931 and 1932. He claimed his salary from April 1930 should be $15,000 per annum instead of $10,000, as it was prior to April 1930, due to the increased population of the county. The defendants demurred to the appellant’s petition assigning among other grounds that there was a deficiency of facts because “ appellant’s salary could not be increased during his term of office.” The court below sustained the demurrer, but the Supreme Court of Indiana reversed, with instruc
 
 *286
 
 tion to overrule the demurrer as to this ground of the demurrer. The court said:
 

 “There is no merit in the contention that an increase in the salary of an officer during his term is involved. The salary was fixed before he was elected. The amount he was to receive from time to time was made to depend upon the population of the county. It is as though the statute in existence when the officer was elected had provided that he should receive $1,000 the first year and $2,000 the second year of his term. In the statute under consideration, the Legislature chose to make the amount of salary dependent upon population shown by the United States census. It might continue during the latter part of the term the same as before the census. It might be more if the population increased. It might be less if it decreased.”
 

 In giving our Constitution and statute what seems to be a reasonable construction, which construction is generally supported by courts of last resort in sister states, this court concludes that the relator must prevail and that a writ should issue accordingly.
 

 Writ allowed.
 

 Williams, Matthias, Zimmerman and Bettman, JJ., concur.
 

 Weygandt, C. J., and Turner, J., dissent.