(No. 38084.— ▮▮▮▮▮▮▮▮)

ROBERT L. BRISSENDEN *et al.,* Appellants, *vs.* MICHAEL J. HOWLETT, Auditor of Public Accounts, Appellee.

*Opinion filed January 22, 1964.*

N. E. HUTSON, of Monticello, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, (JOSEPH A. LONDRIGAN, Special Assistant Attorney General, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The question presented on this appeal is whether an elected officer's compensation, fixed on a population basis by a statute enacted prior to the commencement of his term, may be changed by reason of fluctuation in population, despite the constitutional provision which prohibits increasing or diminishing salaries during terms of office.

The petitioners are county superintendents of schools in eight different counties in Illinois. They were all elected for four-year terms commencing the first Monday in August, 1959. On December 2, 1960, the last Federal census became effective, and disclosed that the population of each of the counties concerned had decreased to such an extent that the salaries provided by statute fell within a lesser bracket. Thereafter the defendant issued warrants

to petitioners for salary based upon the last Federal census, which resulted in each petitioner receiving in salary $1000 per annum less than he had been receiving.

The petitioners joined in filing a petition for writ of *mandamus,* seeking to require the Auditor of Public Accounts to continue to pay them on the salary basis in effect prior to December 2, 1960. The trial court held that petitioners were not entitled to the peremptory writ of *mandamus* and dismissed the case. Since this case involved the construction of the Illinois constitution, petitioners have appealed directly to this court.

The petitioners contend that section 11 of article IX of the Illinois constitution of 1870 precludes any diminution of their salary. The pertinent portion of that section reads as follows: "The fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office, shall be increased or diminished during such term."

The statute fixing salaries of county superintendents of schools is found in section 27 of the Fees and Salaries Act. (Ill. Rev. Stat. 1959, chap. 53, par. 45.) This statute was originally enacted in 1872. It was amended several times over the years to change the amount of compensation, the last amendment becoming effective August 1, 1959, prior to the terms of petitioners. The applicable portion of the statute reads as follows: "County superintendents of schools shall receive for their services an annual salary according to the population of the county under the last Federal census as follows: * * *." The statute then proceeds to establish a fixed amount to be paid in counties within eight specified population ranges.

This precise question has not previously been presented to this court, but has been considered by the courts of several other States.

The majority of jurisdictions considering this question hold that a change in the amount of money received by an

elected official, brought about by a change of population or amount of assessed valuation does not violate a constitutional provision against changing the salary of an elected official during his term of office. *Smith v. Harlan County Fiscal Court,* (Ky.), 329 S.W.2d 61; *Tulsa County v. Stokes,* 207 Okla. 37, 247 P.2d 526; *State ex rel. Mack v. Guckenberger,* 139 Ohio St. 273, 39 N.E.2d 840, 139 A.L.R. 728; *State ex rel. Moss v. Hamilton,* 303 Mo. 302, 260 S.W. 466; *Yuma County v. Sturges,* 15 Ariz. 538, 140 Pac. 504; *Puterbaugh v. Wadham,* 162 Cal. 611, 123 Pac. 804; *St. Joseph County v. Crowe,* 214 Ind. 441, 15 N.E.2d 1016; *State ex rel. Jaumotte v. Zimmerman,* 105 Mont. 464, 73 P.2d 548; Anno: 139 A.L.R. 737.

Three States, however, have reached an opposite conclusion. *Commonwealth ex rel. Woodring v. Walter,* 274 Pa. 553, 118 Atl. 510; *State ex rel. Maltbie v. Will,* 54 Wash. 453, 103 Pac. 479; *Converse County v. Burns,* 3 Wyo. 691, 29 Pac. 894.

The rationale of the majority of these cases is best expressed in *State ex rel. Mack v. Guckenberger,* 139 Ohio St. 273, 39 N.E.2d 840, 843, where the court stated: "The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last federal census becoming effective during his term."

The Illinois Supreme Court has expressed a like under-

standing of the purpose of the constitutional prohibition against a legislative increase in salaries during an elective term. In *People ex rel. Holdom* v. *Sweitzer*, 280 Ill. 436, 442, the court stated: "The constitution expressly prohibits the legislature from increasing the salaries of circuit judges, and, in fact, of all State officers, during the terms for which they are elected. The theory of the framers of the constitution was to make the three branches of government, the legislative, executive and judicial, separate and independent of each other, as far as possible. The power to fix the salaries of State officers is in the legislative branch of the government, the duty to enforce acts of the legislature is in the executive branch, and the power to construe the acts of the legislature is in the judiciary. The acts of the officers of each branch, while such officers are in power, should not be made to depend upon or be influenced by the acts of another branch, nor should there be anything in the conduct of either that would even give rise to a suspicion of such a thing as coercion by reducing salaries or a reciprocal interchange of favors by increasing salaries, hence the reason for the constitutional provision putting it beyond the power of the legislature to increase or diminish the salaries of State officers in office and in power. This is fully borne out by the Debates and Proceedings of the Constitutional Convention as reported in volume 1, pages 1015, 1018, 1019, 1020, 1058 and 1059, in which the practices which had theretofore obtained in securing, or attempting to secure, increases in salaries by certain State officers were set forth forcibly and at length."

It would follow that the spirit and purpose of the constitutional prohibition would not be violated by an act establishing a fixed scale of pay to be determined during the term of office according to such an extraneous fact as the Federal census. As a practical matter this has long been the practice in this State and many elected public officials have long received an additional rate of pay during their terms by

reason of increased population. This practice was approved by an exhaustive opinion of the Attorney General of Illinois in 1941. Attorney General's Opinions, 1941, No. 75, p. 146.

From a review of the decisions of other States, and an analysis of the purposes of the constitutional prohibition, and with due regard to the specific language of the constitution, we feel compelled to adopt the reasoning of the so-called majority view.

The amount of money received by an elected fee officer will obviously vary during his term depending on the number of fees received. While his income varies the rate of his fees must remain constant during his term. So also in a salaried office, the rate or scale of compensation may not be changed during the elected term. The fact that a change of population places an individual office holder at a different place on the predetermined salary scale does not violate our constitution. The constitutional prohibition is directed not against a change in income but against a change in the law determining such income during the term of office. In the present case there has been no such change in the law.

It, therefore, follows that the judgment of the circuit court of Sangamon County was correct, and it is affirmed.

*Judgment affirmed.*