Mr. Andrew Vogt Executive Director Colorado District Attorneys Council 655 Broadway, Suite 525 Denver, CO 80203
Dear Mr. Vogt:
This is in response to your letter of October 17, 1980, in which you request an opinion on the constitutionality of annual incremental increases in the salaries of district attorneys, with said increases being established prior to the commencement of the terms of office.
QUESTIONS PRESENTED AND CONCLUSIONS
The questions you ask are set forth as follows:
1. Is it permissible in view of section 11 of article XII of the Colorado Constitution, for the boards of county commissioners within a judicial district to exercise their discretion under C.R.S. 1973, 20-1-301, as amended, in such a manner that the salary of the district attorney is set to include annual increments, provided that such increments are established prior to the commencement of the term of office to which the district attorney was elected?
 My conclusion is yes, such incremental increases are constitutionally permissible, provided they are established prior to the commencement of the term of office, and provided further that they are automatic and are not subject to discretionary changes.
2. If such increments in the salary of a district attorney are constitutionally permissible, what limitations, if any, would apply to the exercise of such discretion by the boards of county commissioners with respect to when and how much such increments are determined or calculated?
 The principle limitations, as set forth more fully below, are that the amounts of the increase be established prior to the commencement of the term of office, and that the increases be automatic and not be dependent upon any further action by the boards of county commissioners during the term of office.
ANALYSIS
1. The question which you posit is whether Colo. Const., art. XII, § 11 (Supp. 1979), would be violated by a provision under which the salary of a district attorney would increase automatically during his term of office. Such an increase would be established prior to the commencement of the term of office, and would not be subject to the need for further action by the boards of county commissioners during the term of office. For example, such a provision could be a fixed percentage increase, such as a five percent cost-of-living increase, or a fixed dollar increase, such as a $1,000 increase per year.
Article XII, section 11 of the Colorado Constitution reads as follows:
 Section 11. Elected public officers — term — salary — vacancy. No law shall extend the term of any elected public officer after his election or appointment nor shall the salary of any elected public officer be increased or decreased during the term of office for which he was elected. The term of office of any officer elected to fill a vacancy shall terminate at the expiration of the term during which the vacancy occurred.
This section was added in 1974, when a similar provision, article V, section 30, was repealed. It was added as part of a government procedures amendment, and was apparently perceived as a modernizing technical amendment. There is no discussion or explanation of it in the report of the Committee on Legislative Procedures (See Colorado Legislative Council Research Publication No. 203, vol. II, December, 1973). It should be noted that the language of art. V, § 30 was that "no law . . . increase or decrease" the salary of any public officer "after his election or appointment." The language of art. XII, § 11 states "nor shall the salary of any elected public officer be increased or decreased during the term of office for which he was elected." The present language more closely tracks that found in Colo. Const., art. IV, § 19.
District attorneys' salaries are determined under C.R.S. 1973,20-1-301(1) (1978 repl. vol. 8), as amended by House bill 1218, 1980 Session. The minimum salary for district attorneys is established by this statute at $35,000, effective January 7, 1981. Compensation in excess of that amount may be established at the discretion of the boards of county commissioners of the county or counties comprising the judicial district or by the city council of Denver for the Second Judicial District. Your inquiry raises the issue of whether boards of county commissioners or the Denver City Council may exercise this discretion so as to establish automatic, annual increases for their respective district attorneys.
It is clear that provisions such as Colo. Const., art. XII, §11 (Supp. 1979), are designed to prohibit action taken by a legislative body to increase or decrease a public officer's salary during the term of office. The reasons for this prohibition are intuitively logical in constructing an effective system of checks and balances, and in preserving the integrity of government.
In Lancaster v. Board of County Commissioners of JeffersonCounty, 115 Colo. 261, 265, 171 P.2d 987 (1946), the Colorado Supreme Court discussed the reasons behind such a prohibition in analyzing the now-repealed art. V, § 30:
 Those reasons are: To remove temptation from the legislature to influence a public officer by threat or promise of salary change, and to remove temptation from the officer to seek for himself increased compensation.
However, the same concerns do not necessarily arise when one analyzes the impact of legislation which has been passed prior to the commencement of the term of office. In such a situation, the evils from which we are protected by provisions such as Colo. Const., art. XII, § 11 (Supp. 1979), do not come into play. In Young v. Board of County Commissioners of ParkCounty, 102 Colo. 342, 345, 79 P.2d 654 (1938), the Colorado Supreme Court upheld a salary change enacted prior to the election and prior to the commencement of the term, but which was not effective until after the term began. The court concluded that the determining factor was when the legislative body acted:
 The question is, When plaintiff was elected November 6, 1934, what was then the compensation fixed by law for the term for which he was elected? That compensation had been definitely fixed by said chapter 152, already passed and approved, and effective on the date named therein, i.e., January 15. The compensation had been changed as of the date when plaintiff was elected.
In the Young case, the provision being construed was article V, section 30, now repealed, of the state constitution which prohibited increases or decreases in salary after election or appointment. But the reasoning would be the same for purposes of Colo. Const., art. XII, § 11 (Supp. 1979).
There is no Colorado case directly addressing the situation you set forth. However, the majority opinion in other states which have similar constitutional prohibitions is that an automatic increase which is established prior to the commencement of the term of office does not violate the prohibition against increases or decreases during the term of office.
The most frequent situation in which this issue has arisen in other states is when the compensation of an official is automatically increased during the term of office by reason of an increase of the population of his county or city as shown by the federal census which is released or which becomes effective after the beginning of the term of office.
A leading case following the majority view is State ex rel.Mack v. Guckenberger, 139 Ohio St. 273, 39 N.E.2d 840
(1942), in which the Ohio Supreme Court determined that a statute setting the annual salary of a common pleas judge at $3,000, and in addition allowing each judge to "receive an annual compensation equal to three cents per capita for the first fifty thousand of the population of the county in which he presided when elected or appointed, as ascertained by the latest federal census of the United States," did not violate the Ohio constitutional prohibition against increasing or diminishing the compensation of judges during their term of office. In this fact situation, the particular judge had been elected for a six-year term commencing on January 3, 1939, and the latest federal census on the commencement of that term was from April 1, 1930. During the term, there was a federal census released on April 1, 1940, which would have resulted in that judge receiving additional compensation under the statute because of an increase in population.
In upholding the validity of the statute and the additional compensation for the judge, the Ohio Supreme Court reasoned as follows:
 The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last federal census becoming effective during his term.
(39 N.E.2d at 843).
. . . .
 Such compensation must be fixed before his term begins, but there is no inhibition against the Legislature fixing such compensation before the term begins on a basis which may vary it in amount as time advances, provided that basis, within the contemplation and understanding of both the judge and the people who elect him, is fixed, certain and unchangeable during his term. Such action upon the part of the Legislature does not thereby sanction or attempt to legalize an evil or vice which the constitution prohibits.
(emphasis in original, 39 N.E.2d at 845).
. . . .
 While there is a conflict in the cases construing the same or similar constitutional limitations, the weight of authority is that a statute effective before the beginning of the term of a public officer whereby his compensation is automatically increased or diminished during his term by reason of increase or decrease of the population or the valuation of the taxable property as shown by a later census or tax duplicate, is not in conflict with the constitutional inhibition to the effect that the compensation of such officer shall not be increased or decreased during his term of office.
(39 N.E.2d at 845-846).
Similarly, the Oklahoma Supreme Court, in In Board ofCommissioners v. Williams, 38 Okla. 738, 135 P. 420 (1913), stated as follows:
 The foregoing provisions of the Constitution, prohibiting a change of salary of an officer during his term of office, does not require that the salary of an officer shall be uniform throughout his term. It requires only that there shall be no difference in his salary during the different parts of his term, except such as result from the operation of a law enacted prior to his election or appointment. . . . And the fact that the census at one of the periods, occurring after his term began, exceeds the population as shown by the preceding census, and thereby operated to give the officer a greater compensation for the latter period of his term than for the first period, does not constitute a change of salary by operation of any law enacted during his term, but is a difference in salary, resulting from the operation of a statute enacted before his term began.
(135 P. at 422).
And the Arizona Supreme Court, in Yuma County v.Sturges, 15 Ariz. 538, 140 P. 504 (1914), also upheld a statute in which a county officer's salary was automatically increased, and set forth the following reasoning, which is most helpful in responding to your question:
 Let us compare the statute of 1901 with a statute supposed. If the statute existing when appellee went into office made provision that the term of his office shall begin on the 14th day of February, 1912, and end on the 31st day of December, 1914, and that such officer shall receive a salary of $2,200 for the first year of the term, and thereafter during the remainder of said term the officer shall receive a salary at the rate of $2,500 per annum, and that the salary of such officer so provided shall be paid monthly, one could not be persuaded that the provisions of such a statute are within the inhibition of the Constitution prohibiting the compensation of a public officer from being increased during his term of office. In this instance, also, the amount would be graded according to the determination of an extraneous fact, to wit, the fact of one year of the term having expired. The law as it is and the one supposed, though differing in the medium of expression, do not differ in their application.
(140 P. at 506).
In a more recent case, Brissenden v. Howlett, 30 Ill.2d 247, 195 N.E.2d 625 (1964), the Illinois Supreme Court upheld a provision by which the compensation of certain public officials was increased during the term of office on the basis of an increase in population as determined by the federal census. The Illinois provision provided that the salary of a municipal officer who is elected for a definite term cannot be increased or decreased during that term. In summarizing its reasoning, the Illinois Supreme Court stated:
 It would follow that the spirit and purpose of the constitutional prohibition would not be violated by an act establishing a fixed scale of pay to be determined during the term of office according to such an extraneous fact as the Federal census. As a practical matter this has long been the practice in the State and many elected officials have long received an additional rate of pay during their terms by reason of increased population. . . .
. . . .
 The constitutional prohibition is directed not against a change in income but against a change in the law determining such income during the term of office.
(195 N.E.2d at 627).
For other cases following the majority view, see e.g.,Puterbaugh v. Wadham, 162 Cal. 611, 123 P. 804 (1912);Board of County Commissioners of St. Joseph County v.Crowe, 214 Ind. 437, 15 N.E.2d 16 (1938); State ex rel.Harvey v. Linville, 318 Mo. 698, 300 S.W. 1066 (1927);City of Twin Falls v. Koehler, 63 Idaho 562, 123 P.2d 715
(1942); Hamilton v. Foster, 155 Neb. 89,50 N.W.2d 542 (1951).
Only a handful of states have reached a contrary conclusion. The reasoning in these cases is simply that an increase in salary absolutely cannot occur during the term of office for which an official was elected, whether that increase resulted from legislation adopted prior to or during the commencement of the term of office. See, e.g., Sellers v. The SchoolDistrict of the Township of Upper Moreland, 385 Pa. 278,122 A.2d 800 (1956); State ex rel. Maltbie v. Will,54 Wn. 453, 103 P. 479 (1909); Board of Commissioners ofConverse County v. Burns, 3 Wyo. 691, 29 P. 894 (1892).
In several of the above-cited cases, the constitutional provisions being analyzed are virtually identical to Colo. Const., art. XII, § 11. In others, it is virtually identical to that in the repealed version of Colo. Const., art. V, § 30. The difference in language is not an analytical factor in any of these cases, be they majority-view or minority-view cases.
In reviewing these cases, the majority view appears to be the better reasoned view and it is the view adopted in this opinion. It also appears to be the view that would more likely be adopted by the Colorado Supreme Court on the basis of its decisions inYoung v. Board of County Commissioners,supra; Lancaster v. Board of County Commissionersof Jefferson County, supra; and Blakely v.People ex rel. Madden, 104 Colo. 206, 89 P.2d 1015 (1939). However, it should be noted that in Board of County Commissioners of Clear Creek County v. Straub, 75 Colo. 495, 226 P. 1087
(1924), the Colorado Supreme Court, in dicta, seemed to embrace the Wyoming cases, such as Board of County Commissioners v.Burns, supra, which reflect the minority view. InStraub, supra, and in prior Colorado cases, the fact situations involved a legislative action changing the salary in violation of Colo. Const., art. V, § 30. The discussion in Straub is conclusory, not relevant to the decision, and not persuasive. Moreover, Straub is not referred to or cited in any of the later Colorado cases, such asYoung, supra; Lancaster,supra; and Blakely, supra.
In drafting such a provision, it is imperative that any incremental increases be automatic, be enacted prior to the commencement of the term of office, and not be subject to any action by the boards of county commissioners.
Therefore, it is my opinion that annual increases in the salary of a district attorney would not violate article XII, section 11, of the Colorado Constitution, provided the increases were established prior to the commencement of the term of office, and further provided they involve no discretionary act on the part of the boards of county commissioners. Such increases cannot be dependent upon any action of the boards of county commissioners during the term of office, and must be automatic.
2. Your second question asks what limitations, if any, would apply to the exercise of such discretion by the boards of county commissioners with respect to when and how such increments are determined or calculated. Based on the analysis set forth in response to question 1, two limitations are clear. First, the increase, and its method of calculation, should be enacted prior to the commencement of the term of office. Second, any such increase should be based on a predetermined fact or calculation, such as a precise percentage or dollar increase, or population increase, and should not be left to the discretion or action of the boards of county commissioners during the term of office.
These are the critical elements in fashioning a constitutionally permissible provision and should be carefully followed.
SUMMARY
Colo. Const., art. XII, § 11 (1979 Supp.), which provides that the salary of any elected public officer shall not be increased or decreased during the term of office for which he was elected, would not be violated by a district attorney receiving annual increases in his salary, provided that such increases are established prior to the commencement of the term of office to which he was elected, and provided further that the increases be automatic and not be subject to the discretion of the boards of county commissioners.
Very truly yours,
 J.D. MacFARLANE Attorney General
PROSECUTORS DISTRICT OFFICERS PUBLIC FUNDS SALARIES
C.R.S. 1973, 20-1-301
Colo. Const. art. XII, § 11
DISTRICT ATTORNEYS DEPT. DA's Council
Colo. Const., art. XII, § 11 (1979 Supp.) would not be violated by a district attorney receiving annual increases in his salary, provided that such increases are established prior to the commencement of the term of office to which he was elected, and provided further that the increases be automatic and not be subject to the discretion of the boards of county commissioners.