GRAND RAPIDS, NEWAYGO AND LAKE SHORE RAILROAD COMPANY V. EDGAR L. GRAY.

*Municipal courts—Act 49 of 1875.*

The municipal courts provided for in sec. 1 of art. vi. of the Constitution, were intended for the benefit of the cities in which they should be established, and are limited in their jurisdiction; it was not the purpose to give them a jurisdiction co-extensive with the county or materially affect the jurisdiction of the circuit courts.

The Constitution contemplates that each judicial circuit should embrace at least one county and that there should not be more than one circuit court, nor a circuit court and a county court besides, in any one county.

Act 49 of 1875 is unconstitutional in so far as it gives to the Superior Court of Grand Rapids jurisdiction of transitory actions on service upon any defendant within the city, whether any of the parties reside there or not.

Municipal courts, though not inferior tribunals, are limited in their jurisdiction by the residence of parties; and their jurisdiction should be shown on the record, though their judgments and decrees are binding until reversed even if it is not shown.

One who pleads the general issue submits to the jurisdiction and is bound by the judgment of the court; after going to trial on the merits, he cannot in the appellate court first raise the question of jurisdiction.

Case made from the Superior Court of Grand Rapids. Submitted February 1. Decided April 2.

Assumpsit. Plaintiff had judgment below.

*Champlin & More* for plaintiff.

*Gray & Luton* for defendant.

MARSTON, J. Plaintiff brought assumpsit in the Superior Court of Grand Rapids to recover the balance due upon a note. The action was commenced by declaration and service made upon the defendant, who was a resident of Newaygo county, in the city of Grand Rapids. The declaration set forth that plaintiff was a resident of the city. The defendant appeared and pleaded the general issue. The plaintiff afterwards, by leave of the. court, filed an amended declaration, in which no mention whatever was made as to the place of residence of either of the parties. To this declaration defendant filed a plea of the general issue and the parties proceeded to trial, when defendant's counsel objected to the introduction of any evidence on the ground that the amended declaration did not state that either plaintiff or defendant were residents of the city of Grand Rapids, and therefore the court had no jurisdiction of the cause. The court over-ruled the objection of the defendant, to which ruling counsel excepted. The plaintiff recovered a judgment and defendant brings the questions raised here upon a case made.

Section 13 of the Act of March 24th, 1875, defines the jurisdiction of this court as follows:

"The said Superior Court shall have original jurisdiction and concurrent jurisdiction with the circuit court for the county of Kent, in all civil actions of a transitory nature, where the debt or damages are one hundred dollars or over, and in which the defendants, or one of them, if there be more than one defendant, shall have been served with a copy of the declaration, or with process within the city of Grand Rapids, or in which the plaintiff shall reside in the city of Grand Rapids, and the defendants, or one of them, if there be more than one defendant, shall be served with a copy of the declaration, or with process in Kent county."

This section undertakes to give the Superior Court
of Grand Rapids original jurisdiction and concur-
rent jurisdiction with the circuit court for the county of
Kent in all actions of a transitory nature, where the
debt or damages are one hundred dollars or over:
*First*, where the defendants, or one of them if more
than one, are served with process within the city of
Grand Rapids, and this without any reference whatever
to the place of residence of either of the parties, plaintiff
or defendant. *Second*, where the plaintiff is a resident
of the city, and the defendants, or one of them, shall
be served with process in Kent county.

This case comes under the first provision, as there
was no pretense, either in the amended declaration or
on the trial, that plaintiff was a resident of the city.
The defendant was a resident of an adjoining county,
but was served with process in the city—so that the case
comes clearly within the jurisdiction of the court as
conferred by the act already quoted.

The constitutionality of that act is the real question
to be considered, and although the argument was not
as thorough as we might have wished considering the
importance of the question, yet in view of its importance
and oft-recurring nature, I think it best that the exam-
ination should not be longer delayed.

By the Constitution "The judicial power is vested in
one Supreme Court, in circuit courts, in probate courts,
and in justices of the peace. Municipal courts of civil
and criminal jurisdiction may be established by the
Legislature in cities." Art. VI, sec. 1. It is conceded
that the debates in the Constitutional Convention throw
no direct light upon the question, except that the words
"inferior local" were on motion stricken from section
one as reported and the word "municipal" inserted in
lieu thereof, leaving this section as it now stands.

Were this word "municipal" stricken from the sec-
tion, I should still have grave doubts as to the power of
the Legislature to confer so sweeping and extended a

jurisdiction as has by this legislation been attempted, upon courts established in cities. As the section now stands, it seems very clear to my mind, not from that section alone, but from the entire article relating to the judicial department, that the system therein provided for, of dividing the state into judicial circuits, with power to the legislature to alter the limits or increase the number thereof, with the jurisdiction there conferred upon them and upon justices' courts, was considered sufficient for all ordinary purposes; that the system of county courts would no longer be necessary and they were therefore swept out of existence.

It is also clearly apparent that each circuit, as contemplated in and provided for by the constitution, should include at least one county, and that at no time could there be more than one circuit court in a county or a circuit and a county court in the same county. It must however have been a matter considered by the members of the Constitutional Convention, engaged as they were, in the preparation of a judicial system permanent in its character, that a necessity might thereafter arise in some circuits, to relieve them from a part of their business; that in the growth and development of the State, cities would be springing up, in which, owing to the large manufacturing, mercantile and other business carried on and transacted therein, considerable litigation might be expected to arise, and that the circuit court of the county in which such city or cities were situate, would be inadequate to meet the growing demands made upon it in a prompt and satisfactory manner, and that it might therefore. at some time become necessary to establish one or more courts in particular cities to relieve the circuit of a portion of the business, and that with this object and purpose in view the clause in question authorizing the legislature to establish municipal courts in cities was inserted.

There was not however, in my opinion, any intention, by the insertion of this clause, to destroy or materially

change or affect the jurisdiction conferred upon the circuit courts, or any of them, or, that such municipal courts when established, should have a jurisdiction, territorially, in any class of cases, co-extensive with the limits of the county, much less of the entire State. They were in my opinion intended for the benefit of and to meet the wants of the city in which they were established.

To farther test the correctness of these views, and assuming that the jurisdiction sought to be conferred upon this court can be sustained, let us see how far it might be carried and how it would be likely to operate in practice.

If the true construction of this clause is, that while the court must be established and held in a city, jurisdiction may be conferred upon it in any class of cases, limited only by the discretion of the Legislature, what would be the result? That the Legislature is not limited as to the number of municipal courts having concurrent jurisdiction it may establish in a city, must be conceded. And if the Legislature can authorize service of the original process of such courts, where the plaintiff resides in the city, within the limits of the county, then I know of no limitation to the power of the Legislature, under similar circumstances, to authorize service of such process in any and every county in the State. Might the Legislature not in this way, draw to and concentrate in the municipal courts of a particular city, a very large proportion of the entire litigation arising in transitory actions within the State? Or suppose again, that a municipal court is established in the city of Lansing, the seat of the State government, where people from all parts of the State have business to transact with the several departments which necessarily requires their personal presence. In all such cases service within the limits of the city could easily be obtained and the result would be that no one against whom an action might be commenced would be safe. Actions could be commenced

and tried in such a court between parties, where the plaintiff was a resident of one of the southern and the defendant a resident of one of the northern counties in the State, thus compelling parties, at a great and unnecessary expense and inconvenience to themselves and their witnesses to travel long distances in some petty case that never would have been commenced nearer home, or if it had, could be defended with but little expense or inconvenience. Indeed we need not farther pursue the investigation in this direction, as it will readily occur to most minds that abuses of the grossest kinds might easily be perpetrated under such a system, and that the time of such a court could be so engrossed with business from other parts of the State, that the circuit it was designed to relieve would derive no benefit therefrom whatever. To my mind it seems very clear, that a court upon which such a jurisdiction could be conferred, could in no proper sense be called a municipal court, even although established and held within the limits of a city. It may however be said that the Legislature would not be at all likely to confer such an extended jurisdiction upon these courts, yet such is the jurisdiction attempted to be given the Superior Court of Grand Rapids. The question is not however, what the Legislature in its wisdom would or would not be likely to do, but what it has the power to do.

I shall not at present refer to the late decisions of this court, or the cases therein cited, touching the jurisdiction of these courts, as they are already familiar. I may, however, refer to somewhat similar constitutional provisions in other States and the construction placed thereon. In *Meyer v. Kalkmann*, 6 Cal., 590, where under the constitution of that State the Legislature had power "to establish such municipal and other inferior courts as may be deemed necessary," it was held that the jurisdiction of a court established under this authority must necessarily be confined to the territory of the municipality, and that an act giving it power beyond this was

void. This was apparently not followed in *Hickman v. O'Neal*, 10 Cal., 294. In this case the question arose upon an execution issued upon a valid judgment, and it was properly held that the Legislature could authorize the court to send its process for such a purpose beyond the limits of the city. The court said "The Superior Court was not intended to be an inferior court in respect to the mode of enforcing its process, but in respect to the character of the subjects of its jurisdiction, and a subordinate relation to other tribunals. The inferior court, can not, it is true, act upon subjects or persons beyond the limited sphere to which it is restricted; but after it has acted, the mere process by which it is to enforce its judgments, is within the scope of the legislative power." This distinction I fully concur in. The court, however, in *Chipman v. Bowman*, 14 Cal., 158, went the whole length of holding that a summons might be served upon a person beyond the limits of the city.

The constitution of Illinois contained a clause giving the Legislature authority to establish courts as follows: "*Provided* that inferior courts may be established by the General Assembly, in the cities of this State, but such courts shall have a uniform organization and jurisdiction." Under this it was held that an act creating a recorder's court, the jurisdiction of which was not limited to the cities territorially, was unconstitutional. The court said that the constitutional provision limited the territorial jurisdiction of the courts to be established under this proviso, to the cities for which and within which they are established. They were intended to be for the benefit of the cities and to meet their wants, and not that of the adjacent country; that they were designed to dispose of the litigation arising in the cities.

This was followed in *Covill v. Phy*, 26 Ill., 432, where it was held that the common pleas court of the city of Aurora had no jurisdiction to send original process beyond the city limits, nor could such power be consti-

tutionally granted, while as to final process it would be otherwise.

And although under a somewhat, similar constitutional provision a contrary doctrine was held in Wisconsin, yet in *Atkins v. Fraker*, 32 Wis., 510, and *Connors v. Gorey*, id., 518, the earlier cases were overruled, and it was held that the jurisdiction could not be extended beyond the limits of the municipality; that all process must be served within the municipality, but that in transitory actions the voluntary appearance of a defendant residing outside of the municipality would give the court jurisdiction of his person. The case was tried upon the merits and no question of jurisdiction raised.

From a careful consideration of this question I am of opinion that municipal courts established in cities under our Constitution are limited in their jurisdiction, and that the Legislature cannot confer upon such courts the broad and general jurisdiction attempted by section 13 of the act of 1875.

While then these courts cannot be considered as inferior, yet they are of limited jurisdiction, as to the residence of the parties, and the necessary facts should be set forth on the record showing jurisdiction. Such is the well settled rule as to the Circuit Courts of the United States, and I can conceive of no good reason why the same rule should not apply here. *Turner Adm'r v. Bank of North America*, 4 Dallas, 11.

The case of *M'Cormick v. Sullivant*, 10 Wheat., 192, lays down in my opinion the correct rule which should be applied to these courts and their proceedings, viz.: that they are of limited jurisdiction, but are not technically inferior courts; their judgments and decrees are binding until reversed, though no jurisdiction be shown of record.

We are, however, of opinion that a party should not be permitted to proceed to trial upon the merits, and

then attempt for the first time to raise the question of jurisdiction in a case like the present.   By pleading the general issue it may be well said that he has submitted himself to the jurisdiction of the court, and that the judgment will be binding.

The other questions raised are of no importance and need not be considered.

The judgment must be affirmed with costs.

The other Justices concurred.