AN action in mandamus by the people on relation of Madden, judge of the juvenile court of the City and County of Denver, to require officials of Denver who perform duties ordinarily discharged by boards of county commissioners in other counties, to pay him additional salary. The writ was granted.
At the time of relator's election, 1936, the statute provided that the judge of the juvenile court of Denver, "shall receive an annual salary of not less than that received by the district judge or judges of such county [S. L. '23, page 211, section 3, '35 C. S. A., chapter 46, section 205]," payable out of the county treasury in equal monthly installments. Originally (S. L. '07, chapter 149, section 7), the salary of the judge of the juvenile court was fixed at a definite sum per year, $4,000, incidentally the same as the salary of district judges, but having no relation thereto, as in the act of 1923, where no sum was mentioned. Under both acts, 1907 and 1923, the judge of the juvenile court was paid at the rate of $4,000 per annum, in equal monthly installments, and, although the act of 1923 authorized payment of a greater sum, but not less, than that received by district judges, under neither act did the City and County of Denver pay the judge of its juvenile court other than at the rate of $4,000 per annum; nor until as of June 7, 1937, at least so far as appears, had any occupant of that position claimed to have legal right to enforce payment of a *Page 208 
greater salary. Relying on an act of the legislature effective as of the date last mentioned, which fixed the salary of district judges at $5,000 per annum, in lieu of $4,000 as theretofore (S. L. '37, chapter 149, '38 Supp., '35 C. S. A., chapter 66, article 3, section 52), and the act of 1923, supra, relator asserts that as of said date his salary was correspondingly raised. Respondents say that since the act of 1937 was passed while relator still was serving a term of office to which he theretofore had been elected, the Constitution inhibits its operation until the commencement of the next term of that office. They invoke that portion of article V, section 30, of the organic law which reads: "No law shall extend the term of any public officer, or increase or decrease his salary, after his election or appointment, as fixed by legislative enactment."
If it may be said that relator's salary was fixed in the sense of sum or amount at the time of his election, then on authority of Carlile v. Henderson, 17 Colo. 532,31 Pac. 117, and Henderson v. County of Boulder, 51 Colo. 364,117 Pac. 997, called to our attention by counsel for respondents, the contention that there was error below would be sound; and had the act of 1907 remained unchanged, the essential fixity of salary would be manifest. But in 1923, as we have seen, the legislature amended the 1907 act in the matter of the salary of the judge of the juvenile court by tying it, as to amount, to the salary of district judges. The language is, that the judge of the juvenile court "shall receive an annual salary of not less than that received by the district judge or judges" of his county. Clearly, as we conceive, the legislature intended that the salary of the judge of the juvenile court (unless, indeed, county authorities should voluntarily pay a larger salary) shall at all times correspond with, and be not less than, that which the state pays its district judges; and only in that sense did the act of 1923 fix the salary of the judge of the juvenile court. Until the 1923 act, the act of 1907 made full revelation as to *Page 209 
the amount of salary of the judge of the juvenile court. But when the act of 1923 became effective the amount of such salary was ascertainable only by an examination of that act and whatever law fixed the amount of salary of district judges. The process of ascertainment necessarily was a continuing one; that is to say, to cognize the salary of the judge of the juvenile court at any given time, resort must be had to the law in relation to the salary of district judges then in force. Until June 7, 1937, such examination would have shown that the salary of the judge of the juvenile court was $4,000, but on and after that date like research would disclose his salary to be $5,000. When the constitutional provision we have quoted was voted (1928), the people knew that the salary of the judge of the juvenile court was fixed only by reference to that of judges of district courts, and it is reasonable to infer they believed that authorized change in salaries of district judges, when made, would work immediate like result as to the salary of the judge of the juvenile court. Such deduction is akin to the rule promulgated in Golden v. People, ex rel., 101 Colo. 381,74 P.2d 715, where we said: "The people, in adopting that act, merely accepted a status known to all to exist."
We conclude that writ of mandate properly issued. Let the judgment be affirmed.
MR. JUSTICE BAKKE and MR. JUSTICE KNOUS concur.
MR. JUSTICE YOUNG concurs specially.
MR. JUSTICE BOCK and MR. JUSTICE BURKE dissent.
MR. JUSTICE FRANCIS E. BOUCK does not participate.