TAYLOR v. AUDITOR GENERAL.

1. COURTS—SUPERIOR COURT OF GRAND RAPIDS—INCREASE OF SALARY DURING TERM.

The superior court of Grand Rapids, organized under a statute entitled "An act to provide for a municipal court in the city of Grand Rapids, to be called 'The superior court of Grand Rapids,'" is a municipal court, not a *circuit court*, within provision of the Constitution prohibiting increases in salary of any "public officer, except circuit judges" after election or appointment (Const 1908, art 16, § 3; CL 1948, § 727.1 *et seq.*, as amended).

2. SAME—SUPERIOR COURT OF GRAND RAPIDS—CIRCUIT COURTS—JURISDICTION.

The establishment by the legislature of the superior court of Grand Rapids, thereby relieving the circuit court of the county within which it was located of a portion of its business, did not destroy or materially affect the jurisdiction conferred upon circuit court of that county or circuit courts elsewhere in the State (CL 1948, § 727.1 *et seq.*, as amended).

3. SAME—MUNICIPAL COURTS—STATUTES—CIRCUIT COURTS—CONSTITUTIONAL LAW.

Municipal courts, such as the superior court of Grand Rapids, derive their powers from legislative action, whereas circuit courts are invested by the Constitution with powers of which they cannot be deprived by the legislature (Const 1908, art 7, §§ 8–12; CL 1948, § 727.1 *et seq.*, as amended).

4. JUDGES—SUPERIOR COURT OF GRAND RAPIDS—CIRCUIT JUDGES—INCREASE OF SALARY DURING TERM.

The salary of the judge of the superior court of Grand Rapids may not be increased during his term of office, since he is neither legally nor factually a circuit judge within the exception to

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Courts § 17.
[2, 3] 14 Am Jur, Courts §§ 12, 13.
[4, 5] 30A Am Jur, Judges § 67 *et seq.*

the general prohibition in the Constitution against increase of salary of public officers after election or appointment (Const 1908, art 16, § 3; CL 1948, § 727.1 *et seq.*, as amended).

5. COURTS—PRECEDENTS—INCREASE OF SALARY DURING TERM OF OFFICE.

Precedents from other States where salaries of public officers were subject to increase by virtue of increase in population or assessed valuation of property do not support claim of right under statute to increase of salary for judge of superior court of Grand Rapids when circuit judges' salaries were increased, since such latter action is done by legislative action, and except for circuit judges, the Constitution specifically prohibits the increase of salaries of public officers after election or appointment (Const 1908, art 16, § 3; CL 1948 and CLS 1956, § 727.6).

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SALARY OF JUDGE OF SUPERIOR COURT OF GRAND RAPIDS—STATUTE OF LIMITATIONS— FILING OF CLAIM.

A decision of the Supreme Court denying any relief to plaintiff, former judge of the superior court of Grand Rapids, for additional salary during 3 six-year terms of office, renders it unnecessary to discuss defendants' asserted defenses of statute of limitations and plaintiff's failure to observe provision of court of claims act with reference to time of notice of an intent to file a claim and the filing of such claim (CL 1948, §§ 691.111a, 691.117).

BLACK and KAVANAGH, JJ., dissenting.

Appeal from Court of Claims; Fox (Noel P.), J., presiding. Submitted January 3, 1962. (Docket No. 18, Calendar No. 49,178.) Decided September 7, 1962. Rehearing denied November 5, 1962. Certiorari denied by the supreme court of the United States February 18, 1963.

Claim by Thaddeus B. Taylor, former judge of the superior court of Grand Rapids, against State of Michigan, and Otis Smith, Auditor General, for additional salary. Judgment for plaintiff. Defendants appeal. Reversed and remanded for entry of judgment for defendants.

*Thaddeus B. Taylor, in propria persona* (*F. Roland Allaben,* of counsel).

. *Frank J. Kelley,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *Russell A. Searl,* Assistant Attorney General, for defendants.

Carr, C. J. The superior court of the city of Grand Rapids was created by, and organized pursuant to, PA 1875, No 49.[1] The Constitution of 1850 then in force and effect provided in article 6, § 1, thereof that:

"The judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the legislature in cities."

That the legislative action was taken pursuant to the permissive authority granted by the provision quoted of the then fundamental law of the State is apparent. The statute was entitled:

"An act to provide for a municipal court in the city of Grand Rapids, to be called 'the superior court of Grand Rapids.' "

' The provisions of the act were in accord with the general purpose set forth in the title. Notice of the election of the judge of the court was required to be given in the manner prescribed by law with reference to city officers. One elected to the office, under the statute as amended in 1881, entered on the performance of his duties on the first Monday of May next succeeding his election. Pursuant to amendment the clerk has been, and now is, appointed by the judge of the court for a term of 2 years. It is further provided by the statute, as amended, that the judge shall

---

[1] See CL 1948 and CLS 1956, §§ 727.1–727.38 (Stat Ann and Stat Ann 1959 Cum Supp §§ 27.3611–27.3648).—Reporter.

appoint a chief deputy clerk who shall also perform the duties of bailiff. Power of removal of said officers of the court is vested in the judge thereof. Other provisions of the statute clearly indicate the purpose of the legislature to establish a municipal court pursuant to the permissive authority granted with reference thereto by the State Constitution then in effect.

The plaintiff in the instant case served as judge of the superior court of Grand Rapids for a number of terms, retiring on May 4, 1959. Involved here is the question as to the amount of compensation that he was entitled to receive from the State during the last 3 of the 6-year terms served by him. The statute creating the court provided in section 6 thereof as originally enacted, and as subsequently amended, that:

"The judge of said superior court shall receive from the treasury of the State of Michigan the same annual salary as may be payable to circuit judges."

The statute also authorizes additional payments to be made by the city of Grand Rapids pursuant to action of the legislative body thereof.

The present action was instituted in the court of claims of the State, plaintiff seeking a declaratory judgment with reference to compensation that he asserted was owing to him but which State officials declined to pay. The petition was denied for reasons set forth in *Taylor* v. *Auditor General,* 360 Mich 146, and thereafter plaintiff's statement of claim was amended in such manner as to assert the right to a judgment for the aggregate of the alleged withheld payments. The amended claim, referring to the provision of section 6 of the act creating the superior court, above quoted, asserted that on the 10th of January, 1942, the annual salary of circuit judges, payable by the State, was fixed by legislative action

at $7,000, that plaintiff was entitled to a like salary but was paid at the rate of $6,000 per annum until the first of May, 1947, when a new term began. Likewise, during such new term the annual salary of circuit judges was fixed at $9,000 but that plaintiff continued to be paid at the rate of $7,000 until the expiration of his current term of office and his entry on a new term in May, 1953. In August, 1954, the salary of circuit judges was fixed at $12,500 but the officers of the State charged with the duty of paying plaintiff's salary refused to make payments to him at the increased rate during the continuance of his then term of office. Plaintiff asserted that during the aggregate period in question he should have received from the State of Michigan the sum of $28,978.46 over and above the salary payments made to him. He sought judgment for that amount, together with interest, claiming that the officers of the State whose acts he questioned improperly determined the salary that he was lawfully entitled to receive.

The State contested plaintiff's right to the additional payments claimed by him, asserting that under article 16, § 3, of the present Constitution of the State (1908) plaintiff's salary could not be increased during a current term of office. Said section reads as follows:

"Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered or the contract entered into. Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

It was the contention of the defendants on the hearing of the matter in the trial court that plaintiff

was not a circuit judge within the meaning of said section of the Constitution, that he was not entitled to the benefit of the specific exception made in favor of such judges, and that the payments that he claimed should have been made to him were forbidden by the Constitution. It was further pleaded by way of affirmative defenses that the statute of limitations[2] barred all portions of plaintiff's claim asserted to have accrued prior to November 14, 1955; and that plaintiff, having failed to institute action or give notice of his intention to do so within a period of 1 year from the date his claimed cause of action accrued, as provided by section 11a[3] of the court of claims act, was barred as to the portion of his said claim accruing prior to November 14, 1957.

Following a hearing the trial judge rejected defendants' claims and entered judgment for plaintiff in the aggregate sum of $39,190.58 with interest thereon at the rate of 5% per annum from November 15, 1960. From the opinion filed it would appear that the trial judge accepted plaintiff's theory that because of the nature of the jurisdiction vested in the superior court plaintiff was, from both a practical and legal standpoint, a circuit judge within the meaning of article 16, § 3, of the present State Constitution (1908). Defendants have appealed from the judgment entered, asserting that the superior court of Grant Rapids is not a circuit court, that plaintiff during the period in question was not a circuit judge within the meaning of the term as used in the State Constitution, and that the statutory provision on which plaintiff relies that the State shall pay him the same salary as is paid to circuit judges cannot be given the force and effect of render-

---

[2] See CL 1948, § 691.117 (Stat Ann 1959 Cum Supp § 27.3548 [17]).—REPORTER.
[3] CL 1948, § 691.111a (Stat Ann 1959 Cum Supp § 27.3548 [11–1/2]).

ing inapplicable the specific prohibition of article 16, § 3.

As before suggested, there is nothing in the act creating the superior court of Grand Rapids or in subsequent amendments thereto, including PA 1877, No 147, indicating that the legislature of the State has at any time regarded said court as a circuit court. The title of the act of 1875 is significant in this regard, and that title has never been changed. There can be no question as to the provision of the Constitution of 1850 on which the legislature relied in providing for a municipal court in Grand Rapids. The status of said court was involved in several cases arising shortly after its organization, among which are *People, ex rel. Heath,* v. *Kent Circuit Judge,* 37 Mich 372; *People, ex rel. Allen,* v. *Kent Circuit Judge,* 37 Mich 474; *Grand Rapids, N. & L. S. R. Co.* v. *Gray,* 38 Mich 461. In the latter case the Court, after referring to article 6, § 1, of the Constitution of 1850, said (pp 464, 465):

"It is also clearly apparent that each circuit, as contemplated in and provided for by the Constitution, should include at least 1 county, and that at no time could there be more than 1 circuit court in a county or a circuit and a county court in the same county. It must however have been a matter considered by the members of the constitutional convention, engaged as they were, in the preparation of a judicial system permanent in its character, that a necessity might thereafter arise in some circuits, to relieve them from a part of their business; that in the growth and development of the State, cities would be springing up, in which, owing to the large manufacturing, mercantile and other business carried on and transacted therein, considerable litigation might be expected to arise, and that the circuit court of the county in which such city or cities were situate, would be inadequate to meet the growing demands made upon it in a prompt and satisfactory

manner, and that it might therefore at some time become necessary to establish 1 or more courts in particular cities to relieve the circuit of a portion of the business, and that with this object and purpose in view the clause in question authorizing the legislature to establish municipal courts in cities was inserted.

"There was not however, in my opinion, any intention, by the insertion of this clause, to destroy or materially change or affect the jurisdiction conferred upon the circuit courts, or any of them, or, that such municipal courts when established, should have a jurisdiction, territorially, in any class of cases, co-extensive with the limits of the county, much less of the entire State. They were in my opinion intended for the benefit of and to meet the wants of the city in which they were established."

In *Dunham* v. *Tilma,* 191 Mich 688, the question arose as to whether the judge of the superior court of Grand Rapids was entitled to receive during his current term an increase in salary sought to be made by the common council of Grand Rapids. An action of mandamus was instituted against the comptroller of the city to compel him to recognize the increase. It is interesting to note that essentially the same question was raised on behalf of the plaintiff as in the instant case. Specifically it was claimed that the establishment of the superior court of Grand Rapids was not the creation of a new court "but merely a division and continuation of an already established court—the circuit court for the county of Kent—and a carving out therefrom, and a division of the jurisdiction thereof, on a territorial basis." This Court in a unanimous opinion written by Justice PERSON rejected the claim made, pointing out (p 691) that if it were well-founded the superior court without any grant from the legislature would possess all the powers vested by the Constitution in circuit courts. It was emphasized, however, citing *Nichols* v. *Judge*

*of Superior Court,* 130 Mich 187, that municipal
courts derive their powers from legislative action.
and that without reference to the extent of such
powers they still remain municipal courts. *People,.*
*ex rel. Covell,* v. *Treasurer of Kent County,* 36 Mich
332.

The opinion in *Dunham* v. *Tilma* further em-
phasized the fact that the superior court of Grand
Rapids was professedly organized as a municipal
court. It was pointed out that judges of circuit
courts may fill vacancies in the office of county clerk
or prosecuting attorney, and that the clerk of the
county is the clerk of the circuit court for such
county. No claim is or can be made that the judge of
the superior court of Grand Rapids has any such
power of appointment, or that the county clerk is
the clerk thereof. *Dunham* v. *Tilma* was quoted and
followed in *Mooney* v. *Unemployment Compensation*
*Commission,* 336 Mich 344, in which it was held that
a statutory provision granting a right of review by
writ of certiorari from circuit court did not vest
jurisdiction in the superior court of Grand Rapids,
jurisdiction to the municipal court not having been
specifically granted by the legislature.

While plaintiff herein was serving his last term
as judge of superior court the legislature by PA
1954, No 155, increased the salary of circuit judges to·
$12,500 per annum. Relying on the same statutory
provision that is invoked in the present case, plain-
tiff instituted mandamus proceedings in this Court to
compel the auditor general to issue payroll vouchers·
increasing his salary to conform to that paid to·
judges of circuit courts. *Taylor* v. *Auditor General,*
342 Mich 265. The defense to the action was based
on article 16, § 3, of the State Constitution (1908)..
In sustaining the defense it was said (p 269):

"The provision of the Constitution is clear. The legislature cannot fix plaintiff's salary by reference and thus circumvent the express constitutional inhibition against the increase of plaintiff's salary during term. He is not a circuit judge, does not come within the plainly worded exception to the constitutional inhibition, and his salary cannot be increased during term."

It would seem to be unnecessary to pursue further the discussion as to whether the superior court of Grand Rapids may be regarded as a circuit court and the judge thereof classified as a circuit judge within the meaning of article 16, § 3, of the State Constitution. The answer to the query does not lie in the similarity of powers, subject to exceptions and territorial restrictions, but basically rests on the fact that circuit courts are invested by the fundamental law of the State[4] with powers of which they cannot be deprived by legislative action, while the extent of jurisdiction of municipal courts is a matter subject to legislative control, under constitutional provisions pertaining to such functions and to the exercise of the legislative prerogative. As appears from the language of the act creating it, from amendments thereto, and from decisions of this Court relating to the matter, the superior court of Grand Rapids was created under the grant of authority to the legislature to establish municipal courts in cities. We cannot avoid the conclusion as expressed in prior decisions of this Court that the judge of the superior court of Grand Rapids may not be regarded as a circuit judge and as such within the exception set forth in the constitutional provision here involved. On the contrary, he is subject to the general inhibition of that provision and his salary may not be increased during his term of office on the theory that he is either legally or factually a circuit judge.

---

[4] See Const 1908, art 7, §§ 8–12.—REPORTER.

This brings us to a consideration of the question as to the practical effect of section 6 of the act of 1875 creating the superior court of Grand Rapids. That act provided, as does the amended statute,[5] that the judge of the superior court shall receive from the State of Michigan the same annual salary as may be payable to circuit judges. It is the claim of the plaintiff in substance, which claim the trial judge apparently accepted, that this provision of the statute constitutes the establishing of a formula pursuant to which compensation of the superior court judge is to be determined from time to time. Reliance is placed on decisions from other States involving statutes fixing compensation to be paid to certain public officials on the basis of population.

Typical of such decisions is *State, ex rel. Mack,* v. *Guckenberger,* 139 Ohio St 273 (39 NE2d 840, 139 ALR 728). Involved there was a State statute undertaking to fix additional compensation for a judge of a court of common pleas on the basis of 3 cents per capita for the first 50,000 population of the county of residence at the time of election or appointment, as ascertained by the Federal census. It was held that a change in population would entitle the incumbent of the office in question to an increase in salary during his term if it was established by the census that the population had increased to such an extent as to authorize it. A constitutional provision against increasing salaries during terms of office was held not applicable. Of like import are *Crowe* v. *Board of Commissioners of St. Joseph County,* 210 Ind 404 (3 NE2d 76); *State, ex rel. Harvey,* v. *Linville,* 318 Mo 698 (300 SW 1066); *Puterbaugh* v. *Wadham,* 162 Cal 611 (123 P 804). In the above cited decisions, however, it appears that no legislative action claimed as the basis for an increase in

⁵ See PA 1875, No 49, § 6, and also CL 1948 and CLS 1956, § 727.6 (Stat Ann and Stat Ann 1959 Cum Supp § 27.3616).—REPORTER.

compensation during a current term of office was involved. In the case at bar the situation is otherwise. Each increase in the salary of circuit judges, from which plaintiff claims the right to benefit, was due directly to legislative action. We are not, in other words, dealing with a formula resting on the basis of a change in population, an increase or decrease in assessed valuation, or other analogous factor. If plaintiff is entitled to the various increases that he claims in this proceeding it is by virtue of the fact that the legislature spoke and that its action in so doing required the payment to him of increased compensation during his term of office. Such an increase would be as much due to legislative action as though stated in specific language.

Reliance is placed by plaintiff on the decision of the supreme court of Colorado in *Blakeley* v. *People, ex rel. Madden,* 104 Colo 206 (89 P2d 1015). That was a proceeding in mandamus to require the payment of additional salary to the judge of the juvenile court of the city and county of Denver. For some years a salary of $4,000 per annum had been paid. On June 7, 1937, there became effective an act of the legislature fixing the salary of district judges at $5,000 per annum. By prior act of 1923 payment to juvenile court judges of a salary not less than that received by district judges was directed. Relying on said act plaintiff in the case claimed that the increase of the salary of district court judges to $5,000 automatically increased his pay to the same amount during his current term. The defendants relied on a provision of the State Constitution directed against an increase or decrease in the salary of any public officer, after election or appointment, as fixed by legislative enactment. The constitutional provision in question was adopted in 1928. Commenting thereon (p 209) the majority opinion in the case deemed it reasonable to infer that the voters in adopting the

amendment believed "that authorized change in salaries of district judges, when made, would work immediate like result as to the salary of the judge of the juvenile court." It would appear therefore that the Colorado court, in upholding the claim of the plaintiff that he was entitled to the increase in salary, did so on the basis of an assumption that the people had adopted the constitutional provision after the statute had been adopted in 1923 in the belief, or on the theory, that the statute would control and that the prior existing status would continue. It is significant that 2 members of the court dissented, expressing their reasons for dissent in the following terse statement (p 215):

"I think the court's opinion sanctions not only amendment of the constitution by indirection and implication, but amendment by the legislature. My reason for that conclusion, to which I think no answer has been made, may be thus briefly stated: There is not a word in the constitution about a juvenile judge or his salary. Hence if he has any salary it must be provided solely by statute. During every minute that court has been in existence the constitution has forbidden the application of changes in salaries so fixed to persons then in office. This judge was in office when the statute was passed, hence he cannot take the increase during that term."

Whether the assumption on which the majority of the members of the Colorado court apparently relied was properly made does not require discussion. It is certain in the instant case that the interpretation of article 16, § 3, of the Michigan Constitution (1908) does not involve any such consideration. The Constitution of 1850 provided in section 20 of the schedule thereof that "it shall not be lawful hereafter for the legislature to increase or diminish the compensation of any officer during the term for which he is elected or appointed." This provision remained in

force until the effective date of the present Constitution, January 1, 1909. Up to that time it was not within the power of the legislature to increase the salaries of circuit judges, or the salary of the judge of the superior court of Grand Rapids, effective during current terms of office. If we assume, as the trial court suggests in his opinion, "PA 1875 No 49, § 6 was in the minds and intelligence of the delegates to the convention of 1908" the query naturally suggests itself why specific mention was not made in article 16, § 3, of the superior court judge. That was not done and there is no basis for any inference that an unexpressed inclusion was intended. The sole authority cited in support of plaintiff's position as to the effect to be given to section 6 of the act of 1875 is the holding of the majority of the Colorado court, which holding we decline to follow.

The conclusion reached on the principal questions at issue renders it unnecessary to consider the arguments of the defendants with reference to the statute of limitations and the failure to observe the requirements of the court of claims act with reference to the time of notice of an intent to file a claim and the filing of such claim.

The case is remanded to the trial court with directions to set aside the judgment entered and to render judgment in favor of the defendants.

DETHMERS, KELLY, and SOURIS, JJ., concurred with CARR, C. J.

BLACK, J. (*dissenting*).

"What can we know? or what can we
    discern,
When error chokes the windows of the
    mind?"

> Sir John Davies, The Vanity of Human
> Learning (Nosce Teipsum), stanza 15.

Our unintentional yet grievous error, committed in
1955 against faithfully deserving Judge Thaddeus
B. Taylor (*Taylor* v. *Auditor General,* 342 Mich 265),
really does choke the windows of some minds here.
There is no other rational way to account for the
presently proposed opinion for reversal of this
eminently rightful judgment of the court of claims.

Finally, after 7 years of admirable patience and
dogged perseverance, Judge Taylor has forced us
to consider and treat that pat authority and estab-
lished principle (found particularly in *Blakeley* v.
*People, ex rel. Madden,* 104 Colo 206 [89 P2d 1015])
he has righteously relied upon ever since filing—
September 29, 1954—of his original petition for
mandamus.    After 3 entreaties by Judge Taylor
(*Taylor* v. *Auditor General, supra,* decided April 14,
1955; *Taylor* v. *Auditor General,* 360 Mich 146, de-
cided June 6, 1960, and now Taylor *v.* Auditor Gen-
eral) we will have forthrightly done something at
least, that is to say, this Court will have faced up
to the precedent *Blakeley* supplies for dovetail with
our own similarly snubbed case of *People* v. *Reigel,*
120 Mich 78.    I shall refer to such principle as that
which is made when the constituted legislative body
ordains that the amount of salary a to-be-elected-or-
appointed public officer is to receive, in whole or
in part during his term, shall be determined accord-
ing to a readily ascertainable "fluctuating factor."
(The expression is taken from presently quoted
OAG 1951-1952, p 38, No 1269.)

At this point, farsing with due purpose, I insert a manifestly fair question: Were the presently considered *Blakeley, Guckenberger, Crowe,* and *Reigel Cases* examined *at all* by the Court when the first *Taylor Case* was considered and decided in 1955? Although cited and stressed on each occasion (*Taylor* 1955 and *Taylor* 1960),* *Blakeley* in particular was ignored by majority opinion signers, so far at least as the official opinions disclose. On both occasions the Court deigned no recognition or treatment of the easily understood aphorism that legislatures may and occasionally do, with constitutional propriety, provide for prospective and during-term escalation of the salaries of public officers by acting and enacting *prior to election for the official term in question.* And no regard (again as far as the official opinions disclose) seems to have been given that vital word "annual" which, prior to and throughout all of Judge Taylor's elective terms and continuous years of service (1932–1959), appeared in the *only statute which authorized payment to him of any salary whatever from Michigan's treasury.* A man cannot receive "the same annual salary" another receives unless he receives the same amount annually. And he assuredly does not receive the same amount annually when the other's received amount fluctuates regularly upward as his received amount remains stationary.

*First:* Present is a fact—a *controlling* fact—which makes for unerring decision of this case if we will but let it shine through the "windows" of the judicial mind. It is that the legislature has exclusively provided, continuously for more than 85 years, that the judge of the superior court of Grand Rapids "shall receive from the treasury of the State of Michigan the *same annual salary* as may be payable to circuit judges" (see section 6 of the act of 1875 and notes of

---

* Starting on page 15, Judge Taylor's 1955 brief devoted 6 full pages to discussion and quotation of then-scorned *Blakeley.*

amendments, CL 1948, § 727.6). The phrase reads now, in full (CLS 1956, § 727.6 [Stat Ann 1959 Cum Supp § 27.3616]):

"Sec. 6. The judge of said superior court shall receive from the treasury of the State of Michigan the same annual salary as may be payable to circuit judges, and payable in the same manner as are circuit judges."

If the legislature had constitutional power to enact such a statute, and the Chief Justice carefully refrains from denial of such power, then we have before us no more than a question of statutory interpretation, with respect to which the following is submitted. The Chief Justice says:

"If plaintiff is entitled to the various increases that he claims in this proceeding it is by virtue of the fact that the legislature spoke and that its action in so doing required the payment to him of increased compensation during his term of office."

Here we agree and square off. I say the legislature *did* speak, exactly as in *Blakeley* and for many more continuous years prior to all of Judge Taylor's term-tenures; that by its action of 1875 and the successive statutes authorizing increases of State-paid salaries for circuit judges the legislature *did* authorize and require the payment to Judge Taylor of the correspondingly increased compensation Judge Fox awarded him in the court below.*

Now let *Blakeley* speak. The facts are identical. All of the writing justices—not just the majority—held to the only permissible legislative intent, arising from said section 6 (including that word "annual"). What the 7-man court did differ upon, 4 to 2 with 1 justice not participating, was the constitu-

---

* Indeed, during all his years of tenure, no statute excepting said section 6 determined the *amount* of salary Judge Taylor should receive from the State treasury.

tional question arising from the same no-increase no-decrease provision which appears in the Constitutions of Colorado and Michigan. To make our record clear upon this point I quote here the entire *dissenting opinion* of Justices Burke and Bock, which *dissent* the Chief Justice, ignoring all extant authority including *Reigel, supra,* would have us adopt (p 215) :*

"I dissent. I think the court's opinion sanctions not only amendment of the constitution by indirection and implication, but amendment by the legislature. My reason for that conclusion, to which I think no answer has been made, may be thus briefly stated : There is not a word in the constitution about a juvenile judge or his salary. Hence if he has any salary it must be provided solely by statute. During every minute that court has been in existence the constitution has forbidden the application of changes in salaries so fixed to persons then in office. This judge was in office when the statute was passed, hence he cannot take the increase during that term."

When *Blakeley* came to consideration, and for 11 years prior thereto, Colorado's constitution provided : "No law shall extend the term of any public officer, or increase or decrease his salary, after his election or appointment, as fixed by legislative enactment" (Colo Const [1876, amended 1928], art 5, § 30). It was shown that the salary of the office of the petitioner judge† was originally fixed, by enactment in the year 1907, at the sum of $4,000 per year; also that, prior to his election (in 1936), the salary of such office was continuously tied to that of the dis-

---

* Courts usually follow *majority* rather than *minority* opinions, especially when the former appear as having been the subject of greater care and are supported not only by separate and respectable opinions of complete concurrence but also by the clear weight of reasoned authority. For such clear weight and pronouncement thereof, see *State, ex rel. Mack,* v. *Guckenberger, post.*

† Judge Madden, the petitioner in mandamus, held the office of judge of the juvenile court of the city and county of Denver.

trict judge or judges of the county by an act of 1923 providing that the judge of his court "shall receive an *annual* salary of not less than that received by the district judge or judges of such county." It was shown further that the salaries of such district judges were raised in 1937, from $4,000 per annum to $5,000 per annum, and that the respondent fiscal officers refused to pay the petitioner at the higher rate. The respondents relied of course, as do the defendants here, on the mentioned no-increase no-decrease provision. The majority ruled (pp 208, 209):

"If it may be said that relator's salary was fixed in the sense of sum or amount at the time of his election, then on authority of *Carlile* v. *Henderson,* 17 Colo 532 (31 P 117), and *Henderson* v. *County of Boulder,* 51 Colo 364 (117 P 997), called to our attention by counsel for respondents, the contention that there was error below would be sound; and had the act of 1907 remained unchanged, the essential fixity of salary would be manifest. But in 1923, as we have seen, the legislature amended the 1907 act in the matter of the salary of the judge of the juvenile court by tying it, as to amount, to the salary of district judges. The language is, that the judge of the juvenile court 'shall receive an annual salary of not less than that received by the district judge or judges' of his county. Clearly, as we conceive, the legislature intended that the salary of the judge of the juvenile court (unless, indeed, county authorities should voluntarily pay a larger salary) shall at all times correspond with, and be not less than, that which the State pays its district judges; and only in that sense did the act of 1923 fix the salary of the judge of the juvenile court. Until the 1923 act, the act of 1907 made full revelation as to the amount of salary of the judge of the juvenile court. But when the act of 1923 became effective the amount of such salary was ascertainable only by an examination of that act *and* whatever law fixed the amount of salary

of district judges. The process of ascertainment necessarily was a continuing one; that is to say, to cognize the salary of the judge of the juvenile court at any given time, resort must be had to the law in relation to the salary of district judges then in force."

Justice Young, concurring unreservedly and specially, declared his conviction this way (pp 210, 211):

"If the amount he [the judge] is to receive is definite and certain and fixed in dollars and cents, the officer is entitled to receive the specific amount so provided, no more and no less, regardless of any legislative change in the amount made after his election or appointment. If the compensation he is to receive depends on a contingency, as for example, upon the amount of fees he shall receive when fees are fixed and the officer is allowed to retain them, then the compensation, as to the manner of its determination, is fixed, though as to the amount actually to be received it is contingent. One entering upon such an office does so with his compensation fixed though the amount he will receive in dollars and cents is uncertain.  *  *  *

"The effect of section 30, article 5 is to give to the elected or appointed official a vested right to all the compensation that he may receive by virtue of the law providing for his compensation at the time of his election or appointment to office. If the law in force at that time is such that the compensation may vary by reason of the happening of reasonable contingencies, there is vested in the official the right to increased benefits that may accrue, and there is imposed upon him the burden of diminished benefits which may result as the contingencies do or do not arise."

Now let us ascertain whether the truncated reasoning of Justice Burke's dissent accords with the weight of authority; in fact with what this Court

approved many years ago.   First let us examine OAG 1951–1952, No 1269, mentioned above.   On that occasion Attorney General Roth, later circuit judge of the 7th circuit and now a distinguished member of the bench of the United States district court for the eastern division of Michigan, adopted the reasoning of *Crowe* and *Guckenberger*.   Having first quoted *Crowe* (which *Guckenberger* later quoted with approval) as follows (p 41):

"In *Crowe* v. *Board of Commissioners of St. Joseph County,* 210 Ind 404, 408 (3 NE2d 76, 77), also quoted with approval in the *Guckenberger Case* [*State, ex rel. Mack,* v. *Guckenberger,* 139 Ohio St 273, 285, 286 (39 NE2d 840, 139 ALR 728)], the court said:

" 'There is no merit in the contention that an increase in the salary of an officer during his term is involved.   The salary was fixed before he was elected. The amount he was to receive from time to time was made to depend upon the population of the county. It is as though the statute in existence when the officer was elected had provided that he should receive $1,000 the first year and $2,000 the second year of his term.   In the statute under consideration the legislature chose to make the amount of salary dependent upon population shown by the United States census.   It might continue during the latter part of the term the same as before the census.   It might be more if the population increased.   It might be less if it decreased.' ";

Attorney General Roth concluded:

"In my judgment this view is sound and would prevail in this State should the question ever reach our Supreme Court.   Consequently, *so long as a salary, dependent in amount upon a fluctuating factor such as population, is provided for by a statute effective prior to election or appointment of any public officer such officer may receive salary increases due to changes of the salary factor without there being a*

*violation of Const 1908, art 16, § 3. Indeed, the salaries of judges of probate have been so determined for some time."*

The reasoning of OAG No 1269 was expressly followed by Justice KAVANAGH (then as attorney general) in 2 OAG 1955–1956, p 726, No 2822.* See also OAG 1951–1952, p 61, No 1284, wherein Attorney General Roth held that "a majority of the jurisdictions in which the question has been decided have taken the view that such constitutional provisions [no-increase no-decrease provisions] do not prohibit automatic salary changes dependent upon future events if the laws so fixing salaries are seasonably enacted."

Let us come now to our own decision of *Reigel, supra.* There the defendant, once Bay county treasurer, was found guilty of embezzlement for having drawn and retained, over and above his precedently fixed regular salary, certain collection fees which the county board of supervisors had resolved in his favor. The board's action was taken by resolution to approve the following report (p 80):

---

* In OAG No 2822 the posed question was:

"Having in mind the provisions of section 3, article 16 of the Michigan Constitution (1908), is it legally sound to fix the annual salary of an official in a different amount for each year of his term of office, effecting an increase year by year? By way of example, let us suppose that the board of supervisors fixed the salary of an official holding a 4-year term of office at $3,000 payable during the first year of his office, $4,000 payable during the second year of his office, $5,000 payable during the third year of office, and $7,000 payable in the final year of his office."

Attorney General Kavanagh answered:

"In the case you now put, we assume that the salary is being fixed before the election or appointment of the officer. We believe that the reasoning of the prior quoted opinion applies, and that since the amount of the salary is fixed prior to his election or appointment, there is no increasing of salary within the term. Although the amount of salary actually to be received is subject to successive annual raises, the increases are fixed by the proper body before election or appointment, rather than during the period in which the office is held."

"Your committee on ways and means, to whom was referred the matter of the salaries of the county officers, have had the same under consideration, and would recommend that the salaries of the various county officers be as follows for the next 2 ensuing years: For county treasurer, $3,800, and collection fees on liquor and other taxes."

The trial judge ruled that "the effect of this resolution was to fix the salary of the treasurer at $3,800 and the collection fees of liquor taxes, given to treasurers by statute, and it was void as to the 4% collection fees on taxes collected." A directed verdict of guilty followed, and the defendant appealed. This Court held, as against a typical no-increase no-decrease provision, effected by statute* (p 90):

"We are not satisfied that it [the statute] was intended to have the effect stated, and think that it was intended to prevent changes in salaries following the election of officers, before the beginning of or during their terms. We see no reason for saying that it was intended to abrogate section 527 [How Stat], or to affect it, except as it forbids changes during an official term. It is apparent that the amount of the salary fixed in this instance was indefinite and uncertain in a sense, because liable to be increased or diminished through variations in the amount of the collection fees. But the statute was designed to prevent repeated or untimely action by the board, and not to prohibit a method of fixing the salary which should make the amount contingent upon the work done, and which has already been approved, provided the resolution fixing the salary should state the rule by which the amount should be determined."

---

* 1 How Stat, § 508, reading:
"The annual salaries of all salaried county officers which are now, or may hereafter by law, fixed by the board of supervisors, shall be fixed by said board on or before the thirty-first day of October prior to the commencement of the term of such officers, and the same shall not be increased or diminished during the term for which such officers shall have been elected or appointed."

The Chief Justice ignores such reasoning. He does not even mention the *Reigel Case.* Yet here, as in that case, the *amount* of Judge Taylor's precedently ordained State-paid compensation was "indefinite and uncertain in a sense" because it by an old and standing statute was liable to be increased, during each of his elective terms, *on account of constitutionally permitted during-term increases of the State-paid salaries of circuit judges.* (All such judges, of superior and circuit courts, are simultaneously elected for identically co-extensive 6-year terms.) Note especially from *Reigel* that the no-increase no-decrease provision did not prohibit a method of fixing the involved salary by making the amount contingent upon ascertainable future events when and if such events should occur.

The thoroughly reasoned and leading case of *State, ex rel. Mack,* v. *Guckenberger,* 139 Ohio St 273 (39 NE2d 840, 139 ALR 728), has guided our attorneys general to their quoted holdings. Such holdings have determined—for at least a decade—the right of many Michigan public officers to receive, as they have since received, salaries according to various fluctuating factors fixed by ahead-of-election legislation. Such legislation effects a valid legislative purpose. *Guckenberger* tells why (p 278):

"The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the legislature during the term; that the judge is precluded from using his personal influence or official action to have the legislature increase his salary; and that at the same time he is protected against the legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of

the present statute, albeit the compensation of the judge is made variable, from and after the last Federal census becoming effective during his term."

Judge Fox (sitting below; since appointed to the district court bench of the United States) propounded a visibly roguish test of the validity of such legislatively provided fluctuating factor. Citing *Crowe, Guckenberger,* and *Reigel* as authority for upholding his answer, Judge Fox said:

"Let us suppose, for example, that the legislature, in 1945, passed an act which provided—

"Justices of the Supreme Court shall receive from the treasury of the State of Michigan an annual salary of $1,000 in excess of the highest salary paid to judges of the third judicial circuit [Wayne county, including Detroit].

"It occurs to me that such a predetermined formula would be valid and binding under the Constitution of the State of Michigan."

Would that such a question were here, in company with this latest case of Taylor. With our sole right to compensation furnished by, and tied exclusively and precedently to the regularly upgraded salaries of the judges of the third circuit, *one might politely inquire whether any seated Brother then would choose Blakeley's minority dixit over what a visibly thoughtful majority wrote.*

A hard decision, that. By *Blakeley's* dissent there really would be salary trouble for the Supreme Court of Michigan. Let us never forget, just as the dissenters noted in *Blakeley* concerning Judge Madden's office and salary, that in Michigan "There is not a word in the Constitution" requiring payment of *any* salary to Michigan Supreme Court Justices. The people seemingly forgot about the matter of our compensation when they conceived and approved the Constitution of 1908.

What really is before us? In the words of Justice Holmes' most notable dissent (*Northern Securities Co.* v. *United States,* 193 US 197, 401 [24 S Ct 436, 48 L ed 679]), "What we have to do in this case is to find the meaning of some not very difficult words." The words are "same annual salary as may be payable to circuit judges." All we need do—this is Holmes again, same page—is "to read English intelligently."

*Second:* Referring to *Dunham* v. *Tilma,* 191 Mich 688, the Chief Justice says that "It is interesting to note that essentially the same question was raised on behalf of the plaintiff as in the instant case." Respectfully, I disagree. The same question was not raised in *Dunham,* "essentially" or otherwise. *Dunham* dealt with the specific question whether, *during and applicable to the then elective term of the superior court judge, the common council* of Grand Rapids lawfully increased *the city-paid portion of the judge's salary* (not the State-paid portion which, as we have seen, was then and there governed as to amount by said section 6). There being no extant statute tying the judge's *locally contributed portion of salary* to some "fluctuating factor," the Court properly ruled that the common council had violated the no-increase no-decrease provision of said article 16. *Dunham* does not even mention the State-paid portion of the judge's salary. Nor does it deal with said section 6.

*Third:* Throughout the opinion proposed by the Chief Justice the superior court is subtly downgraded to the status of a "municipal" court. Once indeed it may have been such, during the 19th century when the Constitution confined the legislature to establishment of "municipal" courts "in cities" (Const 1850, art 6, § 1). But things do change, of necessity and also by law. The corresponding section of today's Constitution, conjoined with today's

municipal law, through which the territorial jurisdiction and so the burdens of the superior court continue at quickening pace to expand outward in every direction over Kent county, authorize legislative establishment and maintenance of courts "inferior to the Supreme Court." (Const 1908, art 7, § 1). The words "municipal" and "cities" were eliminated in 1908, and there is no doubt now that the jurisdiction and powers of the superior court are equal to those of our circuit courts. As in circuit, the judgments and decrees of the court are reviewable only by this Court. Provision is made for automatic transfer to it of cases which, if originally within its concurrent territorial jurisdiction, have been commenced in the Kent circuit (CL 1948, § 727.21 [Stat Ann § 27.3631]). The rules of practice and procedure prescribed for the court are the same (CL 1948, § 727.15 [Stat Ann § 27.3625]; Court Rule No 1 [1945]). The elective term of the judge (CL 1948, § 727.2 [Stat Ann § 27-.3612]) is the same as that of our circuit judges and, if the legislature meant what it said, the State-paid salary is intendedly the same. It is a circuit court in fact which the legislature may, at any time with constitutional sanction, dub "the circuit court of Grand Rapids" rather than "the superior court of Grand Rapids."*

"The jurisdiction of the [superior] court is defined by section 13, as amended. It has original and concurrent jurisdiction with the circuit court for the county of Kent, and within its territorial limits the jurisdiction conferred is as extensive and broad as that of the circuit court." *Attorney General, ex rel. Danhof,* v. *Renihan,* 184 Mich 272, 275.

---

* "The superior court of Grand Rapids is a court of record having original jurisdiction concurrent with the circuit court for the county of Kent, as provided in CL 1929, § 16351." *Youdan* v. *Kelley,* 267 Mich 616, 619. [The section referred to is currently CL 1948, § 727.13 (Stat Ann § 27.3623).—Reporter.]

### CONCLUSION

This is the third and final occasion when a distinguished veteran of Michigan's judiciary will have appeared before us in effort to obtain his fully earned due. Having been burdened with the judicial power "to do all lawful acts which may be necessary and proper to carry into complete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, and to do all acts which the circuit courts of this State, within their respective jurisdictions, may in like cases issue and do by the laws of this State" (quotation from original and present section 13 of the act of 1875 [CL 1948, § 727.13 (Stat Ann § 27.3623)]); having borne, during the 1940's and early 1950's, quite a share (in addition to the work of his own court) of the work which, but for continued illnesses of elder Kent circuit judges, would normally have been processed by such judges, and living now in precarious health on borrowed time, Judge Taylor asks no more than what by law was owing to his office from and after each of the circuit court salary increase acts of the 1940's and 1950's. Tribute to his unflagging attention to duty, and to the continuously enviable condition of his docket, has been paid regularly by the statistics and annual reports of the court administrator.* Unless appellate error—once committed—must always be denied by the unwitting perpetrators thereof, we have no good reason to deny him the judgment which, at long last in the court of claims, he has rightfully won.

During the darkest hours of the Civil War President Lincoln wrote (August 22, 1862) to his old friend Horace Greeley:

---

* See 1957 report of the court administrator, p 29, and his 1958 report, p 43.

"I shall try to correct errors when shown to be errors, and I shall adopt new views so fast as they shall appear to be true views." (Life and Works of Abraham Lincoln, "Letters II", page 45, Centenary Edition, 1907.)*

A good thought for judges as well as presidents. I vote to affirm and therefore dissent.

KAVANAGH, J., concurred with BLACK, J.

OTIS M. SMITH and ADAMS, JJ., did not sit.

---

* Also in Abraham Lincoln, His Speeches and Writings, ed. by Roy P. Basler (World Publishing Co., 1946), p 652.—REPORTER.